

2000 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

7-25-2000

# Burnett v. Comm. Social Security Admin.

Precedential or Non-Precedential:

Docket 99-5827

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Burnett v. Comm. Social Security Admin." (2000). *2000 Decisions.* Paper 151.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/151

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 25, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-5827

ETHEL BURNETT,

        Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION

Appeal from the United States District Court
For the District of New Jersey
(D.C. Civil No. 96-02003)
District Judge: Honorable Garrett E. Brown, Jr.

Argued: June 20, 2000

BEFORE: GREENBERG and WEIS, Circuit Judges,
and SCHWARTZ, District Judge*

(Filed: July 25, 2000)

Thomas H. Klein (Argued)
Smith & Klein
100 Broad Street
Eatontown, NJ 07724
 Attorney for Appellant

_____

* Honorable Morton I. Greenberg, Circuit Judge, assumed Senior Status
on 6/30/00. Honorable Murray M. Schwartz, Senior United States
District Judge for the District of Delaware, sitting by designation.

          Anthony J. LaBruna, Jr. (Argued)
          Assistant United States Attorney
          District of New Jersey
          970 Broad Street, Suite 700
          Newark, NJ 07102
           Attorney for Appellee

OPINION OF THE COURT

SCHWARTZ, Senior District Judge.

Ethel Burnett ("Burnett"), asserting error in the denial of her application for social security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. SS 401-433, has appealed the District Court's order affirming the final decision of appellee, Commissioner of Social Security ("Commissioner"), to deny Burnett's claim for disability benefits. The District Court exercised jurisdiction under 42 U.S.C. S 405(g), and this Court has jurisdiction over Burnett's appeal pursuant to 28 U.S.C. S 1291. For the reasons set forth below, we vacate the District Court's order affirming the Commissioner's decision and remand the case with instructions to return it to the Commissioner for further proceedings consistent with this opinion.

I. Background

Burnett, born January 6, 1935, has a 10th grade education and worked in supermarket meat and delicatessen departments from 1977 to 1991. She injured her right knee and lower back in a slip and fall accident at work in December 1989. Burnett maintains her back and knee injuries have rendered her totally unable to work since May 18, 1991.

A. Medical History

Burnett was first seen for her knee injury in January, 1990 by Dr. Charles Makowski, who placed her on a conservative treatment regime and referred her to Dr. Richard Surgent. Dr. Surgent observed minor swelling,

2

tenderness of the patella, and muscle weakness in her knee and that she walked with an antalgic gait, favoring her right side. Dr. Surgent ordered an x-ray of the knee, which showed slight narrowing of the medial compartment and joint effusion. He diagnosed her with chondromalacia and prescribed pain killers and physical therapy.

Burnett received physical therapy through Pinelands Physical Therapy from January 1990 through March 1990. In March, 1990 the physical therapist's discharge summary indicated that Burnett had "progressed well" and had returned to work. Dr. Surgent's notes regarding a March 27, 1990 visit indicated Burnett still had some tenderness and grating sensation in the right knee but concluded she had reached a plateau with regard to further treatment.

In the summer of 1991, Burnett twice visited Dr. Makowski, complaining of back pain. MRI scans of her lower back performed for Dr. Makowski indicatedfirst degree spondylolisthesis of the lumbar spine (slight forward displacement of L5 over S1) but no significant spinal stenosis. An X-ray of Burnett's knee showed joint effusion and a narrowed medial compartment. Dr. Makowski again referred Burnett to Dr. Surgent, although she apparently did not see him. Dr. Makowski prescribed pain killers and physical therapy.

Burnett returned to Pinelands for sixteen physical therapy sessions on her knee during July and August 1991. The therapist's notes indicated that Burnett declined treatment for her lower back and that, on release, Burnett's range of motion in her right knee had increased and her knee strength had increased from fair to good.

Burnett was seen by Dr. Roy Mittman in January 1992, complaining of knee and back pain and that her knee gives out during standing. Dr. Mittman observed no medial or lateral joint line tenderness and no gross instability in the knee. He also noted some discomfort, some patellofemoral grinding, and a 1/4 inch atrophy in her right quadricep. He gave Burnett an injection for pain. At a follow-up visit in February, Dr. Mittman concluded Burnett did not have a significant problem with her knee and that she could return to work, noting, however, he was not authorized to deal with Burnett's back problems.

In April 1992, Dr. Alfred Hess conducted a consultive orthopedic examination of Burnett for the Social Security Administration ("SSA"). He observed no joint inflammation, crepitus, or pain on palpation of extremities; normal strength and range of motion in the knee; a small cyst in the right knee; no muscle atrophy; normal gait with no significant antalgia or ataxia and no need for assistive device. He noted a swelling on the coccyx, and concluded it was probably a benign bone tumor. He did not order x-rays or an MRI and did not review her earlier films. Dr. Hess concluded Burnett could lift and carry up to 20 pounds and could "sit and stand intermittently during an eight hour day." R. 163.[1]

In March 1993, Dr. Herbert Knapp saw Burnett and observed she had a broad-based gait, that she favored her right leg slightly, and could not assume even a partial squat. He noted "full extension and [loss of] about 60 degrees of flexion of the right knee complaining of pain in the right patella when flexing." R. 167. Dr. Knapp noted a palpable muscle spasm of the paravertebral lumbar musculature associated with tenderness running from S1 to L4 and tenderness in lumbosacral joint. He diagnosed her with bilateral paravertebral lumbar myositis, lumbosacral sprain, and right knee sprain. Dr. Knapp found Burnett's flexion and extension in her back to be somewhat less than the normal range of motion. He concluded Burnett was "permanently disabled orthopaedically to the extent of 30% of the total," with no improvement expected. Id.

Burnett was next seen in 1993 by Dr. Steven Berkowitz. His examination revealed "a mild limp on the right, tenderness over sacrum and coccyx posteriorly with a limited range of motion, [and] an equivocal straight leg test on the right." R. 169. He also noted no neurological deficits. Based on review of Burnett's earlier computerized tomography ("CT") scan and MRI, Dr. Berkowitz diagnosed her with a degenerative disk at the L5-S1 level with hyperlordosis of the lumbar spine, but noted there was no evidence of spinal stenosis or nerve root entrapment. He

_____

1. The Administrative Record is referred to as "R. ___."

4

prescribed non-steroidal anti-inflammatory medication and concluded there was no need for surgery.

Finally, Burnett's file was reviewed by Dr. Atienza, a physician for the state of New Jersey, who completed a disability determination and transmittal form on January 29, 1994. Based solely on her records, he concluded Burnett could frequently lift 25 pounds and occasionally lift 50 pounds, could stand/walk for 6 out of 8 hours per day, could sit for 6 out of 8 hours per day, had no limitations on pushing or pulling arm or leg controls, and could frequently engage in postural activities, such as climbing, stooping, kneeling, crouching, and crawling. He listed diagnoses of osteoarthritis and chronic pain syndrome, but noted no neurological deficit. On April 28, 1994, Dr. Sandler, also apparently a physician for the state of New Jersey, concurred in Dr. Atienza's assessment.

B. Procedural History

In January 1992, Burnett filed for Social Security disability benefits, asserting her knee and spine injuries and back pain rendered her unable to work since May 18, 1991, at which time she was 56 years old. According to Burnett's hand-written vocational report, her job at the supermarket was as a "deli clerk." She claimed her job required her to walk and stand 8 hours out of an 8 hour day, lift a maximum of 50 pounds at a time, frequently lift 25 pounds, constantly bend, cut and wrap cheese, and use a slicer to clean cheese. The Social Security interviewer who took Burnett's application stated Burnett had difficulty sitting, had to stand periodically during the interview, and complained of back pain. Burnett's claim was denied in May 1992. She missed the appeal time.

Burnett re-filed an application in November 1993, asserting that her knee and back pain had worsened. Burnett's disability report stated she was in constant pain from her leg and spine and that she could neither sit nor stand for too long. Her vocational report again indicated she formerly worked at a supermarket as a "deli clerk," and also that she had worked in the meat department, weighing, wrapping, and lifting trays of meat. Also, the SSA claims interviewer again stated Burnett had difficulty with sitting

5

and also with walking, noting that she had to stand several times during the interview and that she walked with a limp.

After her application was again denied, Burnett requested a hearing before an ALJ, which was held on February 1, 1995. Burnett testified her job involved being on her feet all day, lifting 50 pound cases of cheese from trucks onto dollies, wheeling them to her department, unloading the cases, cutting cheese, and bending. She maintained she has constant and persistent pain in her knee and lower back. Burnett has never been hospitalized or sought emergency care for this condition. She also testified she takes several different pain medications which help somewhat and do not cause any side effects. Burnett also treats her pain with warm soaks and a heating pad. She uses a "donut" to sit to alleviate the pain and numbness in her back. She cannot stand and walk for more than thirty minutes before her leg gets numb and she has to sit, and she cannot sit for more than twenty or thirty minutes before her spine hurts or her tailbone gets numb and she has to stand. She also claims she cannot sleep for more than four hours per night due to the pain. She can only do light shopping and household chores and cannot bend without pain. She goes grocery shopping but can only lift a five pound bag. According to Burnett, she is in constant pain, which is worsened by physical activity, and she cannot engage in social activities or work.

Burnett's husband, George Burnett, submitted a letter to the ALJ attesting that, since her fall, Burnett can neither stand nor sit for any length of time without substantial pain, that she has chronic trouble sleeping, and that she is dependent on pain pills. Burnett's neighbor, Earl Sherman, also testified at the hearing and confirmed Burnett's pain and difficulty standing, walking, and sitting.

The ALJ denied Burnett's claim on August 17, 1995 in a written opinion. R. 10-18. He first concluded Burnett had not engaged in substantial gainful activity since May 18, 1991, the alleged date of the onset of her disability. He next found that, since that time, Burnett has been suffering from "a severe musculoskeletal impairment." R. 15. However, the ALJ concluded Burnett's impairment failed to meet or equal the level of severity of any of the listed

6

disabling conditions set forth in Appendix 1, Subpart P of Social Security Regulations No. 4. See 20 C.F.R. Pt. 404, Subpart P, App. 1 (1999). Finally, he determined Burnett "retained the residual functional capacity to perform her past relevant work as a delicatessen clerk, an occupation requiring light exertional demands." R. 18. Therefore, the ALJ concluded Burnett was not disabled.

Burnett requested review of the ALJ's decision by the Appeals Council, asserting the decision was not supported by substantial evidence. In March 1996, the Appeals Council denied her request for review, rendering the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Having exhausted her administrative remedies, in April 1996, Burnett sought review of the Commissioner's final decision in U.S. District Court pursuant to 42 U.S.C. S 405(g). The District Court affirmed the Commissioner's denial of benefits and dismissed Burnett's case in August 1999.

II. Discussion

We review the ALJ's decision under the same standard of review as the District Court, to determine whether there is substantial evidence on the record to support the ALJ's decision. See 42 U.S.C. S 405(g); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.1994)). Substantial evidence has been defined as "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate." Plummer, 186 F.3d at 427 (internal quotations omitted).

In order to establish a disability under the Social Security Act, Burnett must demonstrate some " `medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve-month period.' " Plummer , 186 F.3d at 427 (quoting Stunkard v. Secretary of Health & Human Servs., 841 F.2d 57, 59 (3d Cir.1988)); see also 42 U.S.C. S 423(d)(1). Burnett is considered unable to engage in any substantial gainful activity " `only if[her] physical or mental impairment or impairments are of such severity that[s]he

7

is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.' " Id. at 427-28 (quoting 42 U.S.C. S 423(d)(2)(A)).

In Plummer, we recounted the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. S 404.1520:

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. S 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. S 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. S 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four andfive. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. S 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. S 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the

8

claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

Plummer, 186 F.3d at 428.

In this case, the ALJ addressed the first four steps and found: (1) Burnett has not engaged in substantial gainful activity since May 18, 1991; (2) Burnett is severely impaired, that is, she suffers from a "severe musculoskeletal impairment"; (3) Burnett's impairment does not meet or equal the criteria for a listed impairment; and (4) Burnett has the residual functional capacity to enable her to perform her past relevant work as a "delicatessen clerk." R. 17–18. Accordingly, the ALJ concluded that Burnett is not disabled for purposes of Social Security disability benefits. The ALJ did not reach step five of the analysis.

On appeal, Burnett first contends the ALJ erred in step three by finding her impairment did not meet or equal a listed impairment. Second, Burnett argues the ALJ erred in step four by finding she had the residual functional capacity to enable her to perform her past relevant work. Finally, Burnett asserts remand for a step five analysis is unnecessary because the record is clear she cannot perform any work in the national economy. Therefore, she maintains, we should vacate and remand with a directive to award benefits.

A. Step Three: Whether Burnett's Impairment Matches
        or is Equivalent to a Listed Impairment

In step three, the ALJ must determine whether Burnett's impairment matches, or is equivalent to, one of the listed impairments. See Plummer, 186 F.3d at 428. If the impairment is equivalent to a listed impairment, then Burnett is per se disabled and no further analysis is necessary. See id. The ALJ's step three analysis states in its entirety:

        Although [Burnett] has established that she suffers
        from a severe musculoskeletal [impairment], said

9

> impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4.

R. 16.

Burnett first contends ALJ erred by making only a conclusory statement without mentioning any specific listed impairments or explaining his reasoning. Second, Burnett asserts the ALJ erred because there was not substantial evidence to conclude her knee and back impairments were not equivalent to impairments listed in sections 1.03 and 1.05C of the listed impairments. Third, Burnett asserts the ALJ erred by not considering the combined effects of her impairments in determining whether they were equivalent to a listed impairment. See 20 C.F.R. S 404.1527(a) (stating that, if there is more than one impairment, the SSA will consider whether the combination of impairments are equivalent to any listed impairment).

As to Burnett's first contention, this Court requires the ALJ to set forth the reasons for his decision. See Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981). In Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996), the Tenth Circuit Court of Appeals set aside an ALJ's determination because the ALJ "merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment," without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning. Id. at 1009. The Court concluded"[s]uch a bare conclusion is beyond meaningful judicial review." Id. But see Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) (rejecting claimant's argument that the conclusory form of the ALJ's decision alone justified remand, but remanding nonetheless because the court could not conclude the ALJ's step three finding was supported by substantial evidence). We agree with Burnett the ALJ's conclusory statement in this case is similarly beyond meaningful judicial review. Cf. Knepp v. Apfel, 204 F.3d 78, 84 (3d Cir. 2000) (affirming where ALJ gave reasons for determining claimant's impairment was not equivalent to a listed impairment cited by medical witness at hearing). Because we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the

10

evidence and an explanation of reasoning supporting a
determination that Burnett's "severe" impairment does not
meet or is not equivalent to a listed impairment. 2 On

_____

2. At the hearing in front of the ALJ, Burnett's counsel did not identify
or raise the two listed impairments which he now argues are pertinent.
On appeal, the Commissioner does not assert that Burnett or her
counsel were required to do so. While the burden is on the claimant to
present medical findings that show his or her impairment matches a
listing or is equal in severity to a listed impairment, see Williams v.
Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992), it is unclear from the
regulations or caselaw whether a claimant must identify the relevant
listing(s). The applicable regulations indicate that it is within the
realm
of the ALJ's expertise to determine the closest applicable listed
impairment, based on the medical evidence, when examining whether a
claimant's impairments meet or equal a listed impairment:

> (a) How a medical equivalence is determined. We will decide that
> your impairment(s) is medically equivalent to a listed impairment
in
> appendix 1 if the medical findings are at least equal in severity
and
> duration to the listed findings. We will compare the symptoms,
> signs, and laboratory findings about your impairment(s), as shown
> in the medical evidence we have about your claim, with the medical
> criteria shown with the listed impairment. If your impairment is
not
> listed, we will consider the listed impairment most like your
> impairment to decide whether your impairment is medically equal.
> If you have more than one impairment, and none of them meets or
> equals a listed impairment, we will review the symptoms, signs, and
> laboratory findings about your impairment to determine whether the
> combination of your impairments is medically equal to any listed
> impairment.

20 C.F.R. S 404.1526 (1999). See also Clifton v. Chater, 79 F.3d at 1009
(noting, in reversing ALJ determination that claimant was not disabled
at step three, that ALJ did not "even identify the relevant Listing or
Listings"). Putting the responsibility on the ALJ to identify the relevant
listed impairment(s) is consistent with the nature of Social Security
disability proceedings which are "inquisitorial rather than adversarial"
and in which "[i]t is the ALJ's duty to investigate the facts and develop
the arguments both for and against granting benefits." Sims v. Apfel, No.
98-9537, 120 S.Ct. 2080, 2000 U.S. LEXIS 3766, at *15 (June 5, 2000)
(citing Richardson v. Perales, 402 U.S. 389, 400-01, 28 L.Ed.2d 842, 91
S.Ct. 1420 (1971)). Such reasoning is further supported by the fact "that
a large portion of Social Security [disability benefits] claimants either
have no representation at all or are represented by non-attorneys." Id. at
*17 (citation omitted).

remand, the ALJ shall fully develop the record and explain his findings at step three, including an analysis of whether and why Burnett's back and knee impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments.

B. Step Four: Whether Burnett's Residual Functional
        Capacity Enables Her to Perform Past Relevant
        Work

In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work. See 20 C.F.R. S 404.1561; S.S.R. 82-62; Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). Both residual functional capacity and past relevant work may be classified as either "sedentary," "light," "medium,""heavy," or "very heavy." See Adorno, 40 F.3d at 47; 20 C.F.R. S 404.1567.

The ALJ first determined Burnett had a residual functional capacity to perform "light" work. R. 16-17. Second, the ALJ found her past relevant work was as a delicatessen clerk and consisted of "light" work. Id. Finally, the ALJ concluded that she had the residual functional capacity to perform her past relevant work as a delicatessen clerk. Id. Burnett contends the ALJ erred in determining both her residual functional capacity and her past relevant work. We agree.

1. The Residual Functional Capacity Determination

" `Residual functional capacity' is defined as that which an individual is still able to do despite the limitations

_____

Because the ALJ concluded that Burnett had a "severe musculoskeletal impairment," it follows that, on remand, the analysis of the listed impairments should focus on those listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1, Pt. A S 1.00 (Musculoskeletal System).

12

caused by his or her impairment(s)." Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. S 404.1545(a)). The ALJ determined Burnett had the residual functional capacity to perform "light" work, which:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. S 404.1567(b). Burnett contends the ALJ's decision is not supported by substantial evidence because: (i) the ALJ failed to consider all of the evidence before him; (ii) the ALJ failed to consider the combined effects of her two impairments; and (iii) the evidence does not support a finding she can perform "light" work.

The ALJ did err by reason of his failure to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination. In making a residual functional capacity determination, the ALJ must consider all evidence before him. See Plummer, 186 F.3d at 429; Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. See Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 705. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

In Adorno, this Court set aside an ALJ determination for failure to mention and refute some of the contradictory medical evidence before him. See 40 F.3d at 48. Similarly, the ALJ in this case failed to mention or refute some of the contradictory medical evidence before him. The ALJ discussed the following objective medical evidence in his determination:

13

– Dr. Surgent's diagnosis of chondromalacia in the knee with minor swelling and muscle weakness;

– MRI scan of lower back showing mild disc bulge without stenosis;

– X-rays showing slight narrowing of the lateral compartment of the knee;

– The physical therapist's report of good strength and range of motion in knee;

– Dr. Mittman's report of no tenderness or instability in knee and his releasing her to return to work;

– Dr. Hess's report finding no objective orthopaedic defects, normal range of motion in back and knee, no muscle spasm, negative straight leg raising test, normal neurological responses, and ability to lift 20 pounds and sit and stand throughout workday;

– Dr. Knapp's diagnosis of knee sprain, lumbar sprain, and lumbar myositis and his findings of good knee stability, no atrophy in knee, ability to perform heel to toe walking, no crepitus, nearly normal range of motion in spine, and muscle spasm in back;

– Dr. Berkowitz's prescription of non-steroidal anti-inflammatory medication and physical therapy;

– the side effects of her medication.[3]

However, the ALJ failed to mention some contradictory, objective medical evidence, including:

– Dr. Makowski's diagnosis, via MRI scan performed by Dr. Vitale, of first degree spondylolisthesis in her lower back;

– Dr. Atienza's diagnoses of osteoarthritis and chronic pain syndrome and Dr. Sandler's concurrence in these diagnoses;

– MRI of knee showing joint effusion;

_____

3. This finding is required by Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

14

– Dr. Surgent's report that Burnett still has grating sensation in the knee and has reached a plateau with regards to further treatment;

– Dr. Knapp's report of a loss of 10 degree range of motion in spine and that she is 30% permanently and totally disabled with no prognosis of improvement;

– Dr. Berkowitz's report of a mild limp, tenderness over sacrum and coccyx, and diagnosis of hyperlordosis;

– Dr. Hess' assessment that Burnett could sit and stand only "intermittently."

The ALJ's failure to mention and explain this contradictory medical evidence was error. See Adorno, 40 F.3d at 48; Cotter, 642 F.2d at 707. On remand, the ALJ must review all of the pertinent medical evidence, explaining his conciliations and rejections.

Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Cotter, 642 F.2d at 707. Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, see Hartranft, 181 F.3d at 362 (citing 20 C.F.R. S 404.1529), the ALJ must still explain why he is rejecting the testimony. See Van Horn , 717 F.2d at 873. In Van Horn, this Court set aside an ALJ's finding because he failed to explain why he rejected certain non-medical testimony. See 717 F.2d at 873. In this case, the ALJ explained he rejected Burnett's testimony regarding the extent of her pain because he determined it was not supported by the objective medical evidence. However, the ALJ failed to mention the testimony of Burnett's husband, George Burnett, and her neighbor, Earl Sherman. On appeal, the Commissioner contends the ALJ did not need to mention their testimony because it "added nothing more than stating [Burnett's] testimony was truthful." Commissioner's Brief at 21. This argument lacks merit because the ALJ made a credibility determination regarding Burnett, and these witnesses were there to bolster her credibility. R. 17 ("claimant's allegations of disability made

15

at hearing are unsubstantiated"). In Van Horn , we stated we expect the ALJ to address the testimony of such additional witnesses. On remand, the ALJ must address the testimony of George Burnett and Earl Sherman.

Next, Burnett contends the ALJ erred by failing to consider the combined effect of her knee and back impairments. Burnett is correct that the ALJ must consider the combined effect of multiple impairments, regardless of their severity. See 20 C.F.R. S 404.1545. The ALJ's opinion indicates he did consider the combined effects of Burnett's impairments. However, because the ALJ failed to consider all pertinent evidence, that ruling is brought into question. On remand, the ALJ must properly consider the combined effects of Burnett's two impairments.

Finally Burnett asserts the ALJ's finding that she can perform "light" work is not supported by substantial record evidence. Burnett claims she lacks the residual functional capacity to even perform "sedentary" work. 4 Because the ALJ erred in not evaluating all of the medical evidence, this Court cannot now assess whether the ALJ's determination that Burnett has the residual functional capacity to perform "light" work was supported by substantial evidence, let alone assess whether she lacks the residual functional capacity to even perform "sedentary" work.

2. The Past Relevant Work Determination

A determination of past relevant work is a determination of the "physical and mental demands of jobs a claimant has performed in the past." S.S.R. 82-62. The ALJ determined Burnett's past relevant work was as a "delicatessen clerk" which involved only "light" work. R. 16-17. Burnett challenges the ALJ's conclusion that her past relevant work

_____

4. "Sedentary" work:

      involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.
      Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. S 404.1567(a).

was "light" work as being unsupported by substantial evidence. We agree.

S.S.R. 82-62 sets forth the evidence which should be considered in making a determination of a claimant's past relevant work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

S.S.R. 82-62 (emphasis added). The assessment of a claimant's past relevant work must be based on some evidence drawn from the above three categories listed in S.S.R. 82-62. See Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986); Cotter, 642 F.2d at 707. It is clear error to make a past relevant work determination that is contrary to uncontroverted evidence presented by the claimant. See id.

In both Brewster and Cotter, the ALJ was presented with uncontroverted evidence from the claimant about the nature of the claimant's past relevant work. See id. The ALJ was not presented with and did not cite any contradictory evidence, such as a Dictionary of Occupational Titles ("DOT") description of how the job is performed in the national economy. See id. In both cases, the ALJ rejected the claimant's testimony and found the past relevant work to be of a different nature. See id. In both cases, this Court reversed the ALJ's determination as being unsupported by substantial evidence in the record because the ALJ's

17

assessment was different from the claimant's uncontroverted testimony about the demands of his past relevant work. See id.

In this case, the ALJ was presented with uncontroverted evidence submitted by Burnett. In her description of her past relevant work on her vocational report, Burnett indicated she was a "deli clerk," who walked and stood 8 hours out of an 8 hour day, lifted a maximum of 50 pounds at a time, frequently lifted 25 pounds, constantly had to bend, cut and wrapped cheese, and used a slicer to clean cheese. In her testimony before the ALJ, she stated her past relevant work involved being on her feet all day, lifting 50 pound cases of cheese from trucks onto dollies, cutting cheese, and bending. This uncontroverted evidence indicates her past relevant work involved "medium" work.5

However, the ALJ rejected Burnett's testimony and found her past relevant work involved "light" work. R. 16, 18. The ALJ held Burnett's description of her past relevant work was "inconsistent with the way this occupation is customarily performed in the national economy." R. 16. Although the Commissioner argues this decision is supported by three pieces of evidence, this purported evidence does not contradict Burnett's vocational report and testimony.

The ALJ cited as contradictory evidence, a purported definition of "delicatessen clerk" in the DOT, which allegedly states this job involves light work. R. 16. "The Dictionary of Occupational Titles (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is usually performed in the national economy." S.S.R. 82-61 (emphasis added). In this case, the ALJ made up the occupational title of "delicatessen clerk." It is simply nowhere to be found in the DOT, nor did the ALJ give any reference to a particular DOT code. An illusory definition in the DOT cannot be relied upon and is not contradictory evidence.

_____

5. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. S 404.1567(c).

18

The Commissioner, recognizing the ALJ created a non-existent occupational title, attempts to substitute reliance on an alternative DOT job title and definition not relied upon by the ALJ, that of "Deli Cutter-Slicer," DOT S 316.684-014, which is rated as "light" work.[6] However, on appeal the Commissioner cannot "recharacterize" the claimant's past relevant work "in an effort to make sense of the ALJ's decision." Adorno, 40 F.3d at 46-47. In Adorno, the claimant's undisputed testimony was that her former job was that of a machine operator, which exposed her to fumes and heavy dust and that her asthma precluded such exposure. On appeal, the agency argued that the claimant's past work was that of a cabinetmaker, which as described in the DOT did not expose the worker to dust and fumes. We declared that such an "attempt to redefine[the claimant's] former occupation" was unsupported by substantial evidence in the record. Id. at 47. Similarly in this case, the Commissioner's attempt to redefine Burnett's past occupation is unsupported by substantial evidence.

Even if the Court did allow this recharacterization of Burnett's job on appeal, the DOT can only be used to supplement or corroborate evidence adduced from the claimant. See S.S.R. 82-62. The occupation of Deli Cutter-Slicer is different from the past relevant work described by Burnett in that a Deli Cutter-Slicer merely cuts and slices cheese and does not participate in the heavier work of unloading cases of cheese from trucks. See DOT S 316.684-014. In contrast, Burnett testified her past relevant work required her to lift heavy cases of cheese from trucks. Since

_____

6. A Deli Cutter-Slicer:

> Cuts delicatessen meats and cheeses, using slicing machine, knives, or other cutters: Places meat or cheese on cutting board and cuts slices to designated thickness, using knives or other hand cutters. Positions and clamps meat or cheese on carriage of slicing machine. Adjusts knob to set machine for desired thickness. Presses button to start motor that moves carriage past rotary blade that slices meats and cheeses. Stacks cut pieces on tray or platter, separating portions with paper. May weigh and wrap sliced foods and affix sticker showing price and weight.

DOT S 316.684-014.

the DOT does not corroborate or supplement the uncontroverted description given by Burnett, and is not consistent with her description of her past relevant work, this definition cannot be used to cast doubt on Burnett's credibility as to her past relevant work.[7]

Inexplicably, the ALJ refuted Burnett's contention that she lifted 50 pound boxes of cheese by observing she "is diminutive, weighing no more than 100 pounds," making it "unlikely" she would have been asked to lift 50 pounds on the job. R. 17. However, an ALJ may not make speculative conclusions without any supporting evidence, see Plummer, 186 F.3d at 429, not to mention conclusions apparently based on gender stereotyping. In this case, there is absolutely no evidence, medical or otherwise, that a 5 foot tall, 100 pound woman would be unable to lift a 50 pound box. In making this conclusion, the ALJ went beyond the uncontradicted evidence in the case and committed error.

---

7. On appeal, Burnett asserts her past work was more akin to DOT S 299.367-014, Stock Clerk, which has alternate titles including Delicatessen-Goods Stock Clerk, and is defined as follows:

> Inventories, stores, prices, and restocks merchandise displays in retail store: Takes inventory or examines merchandise to identify items to be reordered or replenished. Requisitions merchandise from supplier based on available space, merchandise on hand, customer demand, or advertised specials. Receives, opens, and unpacks cartons or crates of merchandise, checking invoice against items received. Stamps, attaches, or changes price tags on merchandise, referring to price list. Stocks storage areas and displays with new or
> transferred merchandise. Sets up advertising signs and displays merchandise on shelves, counters, or tables to attract customers and promote sales. Cleans display cases, shelves, and aisles. May itemize and total customer merchandise selection at check out counter, using cash register, and accept cash or charge card for purchases. May pack customer purchases in bags or cartons. May transport packages to specified vehicle for customer.

DOT S 299.367-014. Although this position generally involves the unloading of merchandise and is designated as a medium to heavy occupation, it also involves other tasks related to inventory and pricing that, based on the current record, Burnett does not appear to have done in her past work. More likely, Burnett's past relevant work falls somewhere between a deli cutter-slicer and a deli stock clerk as defined in the DOT.

20

Finally, the Commissioner notes that Burnett did not raise a specific objection to the ALJ's conclusion that she worked as a delicatessen clerk in her request for review to the Appeals Council.8 The Commissioner asserts that, under the doctrine of administrative exhaustion, a court should not consider an argument which has not been specifically raised in agency proceedings which preceded the appeal. Therefore, the Commissioner argues, Burnett may not raise this issue as grounds for appeal. We disagree. In Sims v. Apfel, supra note 2, the Supreme Court directly addressed this issue and held that Social Security disability "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." 2000 U.S. LEXIS 3766, at * 18. Therefore, Burnett is not precluded from raising this issue on appeal.

For the foregoing reasons, we hold the ALJ's assessment of Burnett's past relevant work is not based on substantial evidence in the record. On remand, the ALJ should fully develop the record and make specific findings as to the physical and mental demands of Burnett's past relevant work. See SSR 82-62;9Winfrey, 90 F.3d at 1023. Absent additional evidence to the contrary, the ALJ must accept

_____

8. Parties make requests for review of a hearing decision to the Appeals Council using a standard form, HA-520-U5 (3-94). R. at 6. Item number 5 of that form states "I request that the Appeals Council review the Administrative Law Judge's action on the above claim because:" and provides just three lines for the claimant to fill in the reason. Id. Burnett in her request asserted generally that the ALJ's decision was not supported by substantial evidence. Id.

9. SSR 82-62 states:

>    Sufficient documentation will be obtained to support the decision. . . .
>
>    Adequate documentation of past work includes factual information about those work demands which have a bearing on medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other jobs requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. . . .

Burnett's representations and enter a finding that Burnett's past relevant work involved "medium" work. 10

C. Step Five: Whether Burnett Could Perform Other
        Work in the Economy

The final step is an analysis of whether Burnett, based on her age, experience, and education, can perform any other available work in the economy. See Plummer , 186 F.3d at 428. Burnett contends this Court need not remand for a step five analysis because this determination involves simple application of the Medical-Vocational Guidelines or "Grids," see 20 C.F.R. Pt. 404, Subpart P, App.2, to determine that Burnett is disabled. More specifically, Burnett maintains that because of her advanced age, 56 years old at the time of alleged onset of the disability in 1991, her limited education, and lack of transferable skills, regardless of whether she is capable of performing"light" work as the ALJ determined, or "sedentary" work, the Grids dictate a finding of disability. Therefore, she asserts, a remand is unnecessary. We disagree.

A step five analysis can be quite fact specific, involving more than simply applying the Grids, including, perhaps, testimony of a vocational expert. See, e.g., Plummer, 186 F.3d at 431. Although Burnett's age and education level are undisputed, from the record we cannot be confident that Burnett possess no skills or is not semi-skilled with transferable skills. Therefore we must remand for further factual findings with regard to the level and transferability of Burnett's skills.

III. Conclusion

For the foregoing reasons, the District Court's dismissal of Burnett's claim will be VACATED, and the case REMANDED to the District Court with directions to remand to the Commissioner for additional proceedings consistent with this opinion.
_____

10. Should the ALJ continue to find Burnett to have a residual functional capacity for "light" work and that Burnett's past relevant work was "medium," then the ALJ must enter a finding Burnett lacks the residual functional capacity to perform her past relevant work.

On remand, the ALJ shall fully develop the record and explain his findings at step three, including an analysis of whether and why Burnett's combined impairments are or are not equivalent in severity to one of the listed impairments. If it is necessary to reach step four, in determining Burnett's residual functional capacity, the ALJ must make specific findings as to all of the pertinent medical evidence, reconciling conflicts and, if rejecting particular evidence, explaining why; must address the non-medical evidence of George Burnett and Earl Sherman; and must consider the combined effects of Burnett's two impairments in conjunction with any medical evidence previously not considered and not rejected on remand. Additionally, the ALJ should fully develop the record and make specific findings as to the physical and mental demands of Burnett's past relevant work. Finally, if it is necessary to reach step five, the ALJ is directed to make the requisite factual findings with regard to the level and transferability of Burnett's skills.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit