

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2005

# Richardson v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3548

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Richardson v. Comm Social Security" (2005). *2005 Decisions*. Paper 1045.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1045

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3548

FLORENCE RICHARDSON,
on behalf of Maxwell D. Richardson, III, a minor,

Appellant

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

On Appeal from the United States District Court
for the District of Delaware
D.C. Civil Action No. 02-cv-00373
(Honorable Kent Jordan)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 23, 2005

Before: SCIRICA, *Chief Judge*, ALITO and ROSENN, *Circuit Judges*

(Filed   June 8, 2005)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Petitioner Florence Richardson, on behalf of her son Maxwell D. Richardson, III, appeals the denial of child Supplemental Security Income benefits under Title XVI of the Social Security Act.[1]

**I.**

In February 2000, Florence Richardson filed an application for child Supplemental Security Income (SSI) on behalf of her son, Maxwell D. Richardson, III, who was born in 1989. Richardson claimed that her son is disabled because of Attention Deficit Hyperactive Disorder (ADHD) and developmental disabilities present since birth.

Maxwell had a long history of treatment, including physical, occupational, and speech therapy, for delays in motor functioning and delays in speech and language development. Since April 1996, Maxwell has been treated for ADHD by William Houston, M.D. from the A.I. duPont Institute. Maxwell's ADHD is managed through medication, initially Ritalin and currently, Adderall.

Richardson's initial application was denied by an administrative law judge who determined that Maxwell's impairments did not meet, medically equal, or functionally equal the severity of the applicable impairments. The district court affirmed the ALJ's order that Maxwell was not entitled to child's SSI.

_____

[1]This case does not include a review by the Appeals Council because the case was selected randomly to test an experimental, modified disability determination process that does not include such review.

**II.**

We exercise jurisdiction over the District Court's grant of summary judgment under 28 U.S.C. § 1291. We employ a substantial evidence standard to review a Commissioner's final denial of benefits. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 422 (3d Cir. 1999)). However, we have the "responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 317 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

**III.**

For a child under the age of 18 to be considered disabled and eligible for SSI under the Social Security Act, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a) (3) (C) (i) (2004). The Regulations outline a three-step sequential evaluation process to determine a child's eligibility for SSI. 20 C.F.R. § 416.924 (2001). Under this analysis, a child will be found disabled if he or she is not working or engaged in substantial gainful activity; if he or she has a medically determinable impairment or combination of impairments that is severe;

3

and if the impairment(s) meets, medically equals, or functionally equals the severity of impairments listed in 20 C.F.R. § 404, subpt. P, app. 1 (2004). For an impairment to be functionally equal in severity, a child must show "marked" limitations in two domains of functioning or "extreme" limitation in one domain. 20 C.F.R. § 416.926 a (a) (2005). The six development and functioning domains include: acquiring and using information; attending to and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. § 416.926 a (b) (1) (i) - (vi) (2005).

If there is substantial evidence in the record to support the Commissioner's findings, we are bound by such determination. *Morales*, 225 F.3d 310 at 316. Evidence is not substantial if the Commissioner failed to consider all relevant evidence or failed to resolve conflicts created by countervailing evidence, particularly that of a treating physician. *Id.* at 317. In all disability determinations, evidence offered by a treating physician must be accorded great weight. *Id.* An ALJ is allowed to reject a treating physician's conclusions so long as the rejection is based on other medical evidence, not on personal inferences or speculation. *Id.* at 317-18. The ALJ must consider multiple impairments in combination if none alone qualifies as a listed impairment or its equivalent. *Burnett v. Commissioner*, 220 F.3d 112, 122 (3d Cir. 2000).

4

At steps one and two of the disability analysis, the ALJ found that Maxwell, then a seventh-grader, was not working or engaged in substantial activity and that his ADHD, learning disabilities, and developmental delays qualified as severe because they caused "more than minimal functional limitations." However, at step three, the ALJ determined that Maxwell's disabilities failed to meet or medically or functionally equal the severity of the listed impairments.[2]

The ALJ's detailed opinion demonstrates that he considered Maxwell's disability in light of his special education placement and his medication. The fact that Maxwell was in special education does not in itself constitute a statutory disability. *See* 20 C.F.R. § 416.924a (b) (7) (2005) (stating that "The fact that you do or do not receive special education services does not, in itself, establish . . . actual limitations or abilities."). The ALJ found that Maxwell's medication, when monitored and administered properly, adequately controlled his disability and determined that any limitations that persisted did

---

[2]Some mention is made in the record about whether Maxwell has cerebral palsy based on a medical notation from Dr. Fred A. Fow during Maxwell's visit to the emergency room when he put his arm through door glass and subsequent notations from Dr. Raymond E. Dahl and Dr. Suken A. Shah from the Department of Orthopaedics. However, since there is no substantial medical evidence and no conclusive diagnosis of cerebral palsy by a neurologist, the ALJ concluded that Maxwell had not been diagnosed with cerebral palsy. Additionally, Maxwell had asthma, but it was not raised as material to his disability nor has his asthma resulted in any hospitalizations or frequent medical visits during the previous year considered by the ALJ. The ALJ found based on medical evidence that Maxwell's asthma was effectively controlled through the use of Intal and did not constitute a severe limitation.

not create marked inattention, hyperactivity, or hyperactivity as outlined in evaluations and reports from evaluating professionals. *See* 20 C.F.R. § 416.924 (b) (9) (i) (A) (2005) (requiring consideration of "functional limitations that may nevertheless persist, even if there is improvement from the medications."). *See also* 20 C.F.R. pt. 404, subtp. P, app. 1 § 112.11 (listing the required criteria for ADHD).

The ALJ based his determination on treatment notes of treating physician, William Houston, M.D., his final letter urging the ALJ to find Maxwell disabled, and evidence from Maxwell's teachers and other examining physicians and professionals. The ALJ declined to assign controlling weight to Dr. Houston's final letter in light of several years of treatment notes indicating that Maxwell's ADHD was generally under control when taking medication and that lapses in progress had been treated with adjustments in medication brand and dosage.

The ALJ also considered a report from Dr. Patricia Lifrak, the state agency consultant, who reviewed Maxwell's record and determined that he exhibited no marked behavior problems at home and that Adderall helped him focus and complete tasks. Dr. Lifrak noted Maxwell's low average to borderline functioning with a normal attention span and found little evidence of hyperactivity or anxiety. Dr. Lifrak found Maxwell to be sociable and agreeable to peers, teachers, and other adults with whom he had contact. Dr. Lifrak noted that Maxwell's mother reported few behavioral problems at home. A

6

report from Dr. I.L. Lifrak[3] determined that Maxwell was within the normal range for all physical aspects of functioning. The ALJ also relied on a report by Heidi Grieb-Ginn, M.S., a speech/language pathologist, who determined that Maxwell's oral motor skills and articulation were within functional limits and that he performed tasks with little assistance.[4] Finally, the ALJ considered the reports of two state agency psychological consultants who ultimately concluded that Maxwell's limitations did not meet the statutory requirements of severity.

Maxwell's school reports reflected his academic difficulties and often below grade levels but showed consistently average performances in most subjects including his mainstream art classes. The ALJ concluded that, with the exception of one quarter in the seventh grade, academic reports recognized Maxwell's limitations and special educational placement and were indicative of his general ability to function. Maxwell's teachers, Ms. Williams and Mr. Hendel, both indicated that Maxwell's scholastic performance was below grade, but neither teacher found him to be a discipline problem nor unable to complete most tasks. The ALJ considered Mr. Hendel's final letter, which suggested Maxwell had marked limitations, but afforded the contemporaneously written reports more weight.

---

[3]For the sake of clarity, we note that Dr. Patricia Lifrak and Dr. I.L. Lifrak are two different people, who performed separate evaluations of Maxwell.

[4]Ms. Grieb-Ginn found Maxwell to have moderate to moderate/severe delays in receptive/expressive vocabulary and language respectively.

The ALJ also considered the testimony and reports of Florence Richardson, Maxwell's mother. The ALJ concluded that the reports were generally consistent in finding that Maxwell has functional limitations but that with appropriate drug therapy, Maxwell remained focused, able to complete tasks, and generally well-behaved. The ALJ found that reported deviations in Maxwell's appropriate behavior were consistent with behavior of other children his age. Furthermore, the ALJ found that Maxwell socialized with at least three friends and appropriately engaged in dribbling a basketball, playing video games, and watching television.

The ALJ focused his analysis on whether Maxwell's combined conditions functionally equaled a listed impairment. Only the ALJ's findings in domains one (acquiring and using information), two (attending to and completing tasks), three (interacting and relating with others), and five (caring for oneself) have been raised on appeal.

The ALJ did not dispute that Maxwell's learning disability impaired his ability to acquire and use information. However, the ALJ found based on questionnaires by Maxwell's teachers, academic progress reports, and conclusions of evaluating professionals, that in spite of his limitations, Maxwell demonstrated progress in learning and obtaining knowledge. The ALJ concluded that Maxwell did not exhibit an extreme or marked limitation in this domain.

In domain two, the ALJ relied on the same information from Maxwell's teachers and evaluating professionals to conclude that Maxwell could remain focused and complete tasks especially when he took his medication as prescribed. Maxwell's fifth grade teacher assessed Maxwell's ability to complete tasks at one hundred percent. Taken as a whole, there is substantial evidence to support the ALJ's conclusion that Maxwell did not have a marked or extreme limitation in domain two.

Domain three measures a child's ability to interact and relate to others. Throughout all reports from Maxwell's teachers, evaluating professionals, and his mother, Maxwell was most often described as outgoing, cooperative, social, and happy. Maxwell had limitations in his language development, but based on the record, there is substantial evidence to show that Maxwell did not have marked or extreme limitations in this domain.

The ALJ concluded that in domain five, caring for oneself, Maxwell possessed the same ability as most boys his age who must be reminded to bathe or perform household chores. Dr. Patricia Lifrak also noted in her report that Maxwell possessed the ability to adequately address his daily needs. The record demonstrates substantial evidence that Maxwell did not have marked or extreme limitations in this domain.

## V.

For the reasons set forth above, we will affirm the judgment of the District Court.

9