

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2005

# Rembert v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4063

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Rembert v. Comm Social Security" (2005). *2005 Decisions.* Paper 802.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/802

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4063

_____

FRANK REMBERT, JR.,
                                        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 02-cv-01394
District Judge:  The Honorable Dennis M. Cavanaugh

_____

Submitted Under Third Circuit LAR 34.1(a)
July 1, 2005

_____

Before: ROTH, RENDELL, and BARRY, Circuit Judges

_____

(Opinion Filed:  July 20, 2005)

_____

OPINION

_____


BARRY, Circuit Judge

    This is an appeal by Frank Rembert ("Rembert") from the District Court's

affirmance of the decision of the Commissioner of Social Security denying him disability

benefits. The question before us is whether substantial evidence supports the Commissioner's final decision that Rembert's disability ceased as of December 1, 1998. We will affirm.

We will limit our discussion to those facts pertinent to our disposition of the appeal. In 1992, Rembert was found to be disabled "based upon a primary diagnosis of major depression, and a secondary diagnosis of low back pain." A26. A continuing disability review decision, however, found that his disability had ceased as of December 1, 1998 and ordered that his benefits cease on February 28, 1999. Rembert appealed this decision and subsequently appeared before an ALJ in an attempt to have those benefits reinstated. The ALJ rejected Rembert's request, finding that he no longer suffered from depression,[1] his drug addiction was in remission, and that his back and neck impairments, while still severe, did not prevent him from performing light work.

Rembert argues to us that: (1) the ALJ did not explain why his back and neck impairments did not meet or equal any of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) the ALJ did not explain why he was capable of performing light work; (3) the ALJ did not discuss his subjective complaints; and (4) the ALJ

---

[1]Indeed, the ALJ observed that Rembert received no medical treatment for depression in the ten years preceding the cessation proceedings, but began treatment once the cessation proceedings commenced. He also found it significant that there was no evidence that Rembert's back condition had worsened since the comparison point decision date of April 11, 1992 and that treatment for his back condition was non-existent until recently. A30.

impermissibly relied on the grids at step five of the analysis.

We first address Rembert's argument that the ALJ did not compare his back and neck impairments to any of the listings. Relying on *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112 (3d Cir. 2000), Rembert maintains that the ALJ's failure to explicitly state which listing he used as a comparison requires us to vacate the decision. In *Burnett*, the ALJ's "analysis" consisted of the following statement: "Although [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in [the listings]." 220 F.3d at 119. The *Burnett* Court found this bare conclusion inadequate because it prevented meaningful review. After all, we said, an ALJ has a duty not only to fully develop the record, but to "explain his findings at step three, including an analysis of whether and why [a claimant's impairments] are or are not equivalent in severity to one of the listed impairments." *Id.* at 120.

The ALJ did not explicitly focus on any one listed impairment.[2] Nonetheless, as the District Court explained, the ALJ, after finding that Rembert did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment, reviewed, analyzed, and relied on the medical evidence and Rembert's

---

[2]The government argues that the ALJ compared, albeit not explicitly, Rembert's impairments to the factors provided by Listing 1.00 for impairments of the musculoskeletal system. We need not decide whether that is so, although it certainly appears that the ALJ considered the requirements of Listing 1.00 prior to concluding that Rembert's impairments were not of Listing severity.

testimony to support his conclusion that Rembert's impairments did not meet any of the listed impairments. That was sufficient.

Next, Rembert argues that the ALJ violated the *Cotter* doctrine at step four by failing to "recite all probative evidence and explain which entries were persuasive, which weren't and why." Brief at 12. According to Rembert, the ALJ merely engaged "in a blanket recitation of the evidence followed by an announcement of appellant's RFC." *Id.* In sum, he argues, the ALJ did not provide an adequate explanation for why he is capable of performing light work.

We disagree. The ALJ found that Rembert's "severe" impairments prevented him from performing his past job as a truck driver because "he would have to pull himself up to the driver's seat." A30. The ALJ then analyzed the evidence, afforded Dr. Bradley's assessment that Rembert was doing "exceedingly well with his back," A29, "controlling weight" because he was the treating orthopedic physician and because his report conformed more closely to the other evidence, and concluded that Rembert was capable of performing light work.

This conclusion is confirmed by an independent review of the record. In particular, a residual functional capacity assessment performed in July 1999 indicated that Rembert was capable of lifting 50 pounds occasionally, 25 pounds frequently, and standing or walking for six hours in an eight-hour work day. Further, Dr. Vekhnis, the state's medical consultant who examined Rembert, reported that he had a "benign

4

orthopedic examination" with a full range of lumbar motion, and had little difficulty squatting or walking on his tiptoes. A29. Consequently, substantial evidence supported the ALJ's finding that Rembert can perform light work.

Rembert also argues that the ALJ did not address his subjective complaints of pain in the course of making a determination of his residual functional capacity and in the course of determining whether his pain in and of itself satisfied the requisite threshold for a disability determination. This argument is without merit. The ALJ discussed Rembert's complaints of pain, but discounted those complaints given that Dr. Bradley's progress reports showed that Rembert's pain had subsided. A29.

Finally, Rembert argues that the ALJ impermissibly relied on the "grids" at step five because he has a significant non-exertional impairment --namely, an ability to only perform "routine and repetitive" tasks. Brief at 21. This argument, too, is without merit because no evidence suggests that Rembert is *only* capable of performing routine tasks.

For the foregoing reasons, the District Court's order of August 19, 2004 will be affirmed.