**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4586
_____

MARCIA W. WILLIAMS,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-12-cv-05719)
District Judge:  Honorable Peter G. Sheridan

Submitted Under Third Circuit LAR 34.1(a)
June 24, 2014

BEFORE:  McKEE, *Chief Judge*, and FUENTES and NYGAARD, *Circuit Judges*

(Opinion Filed:  September 11, 2014)

_____

OPINION
_____

NYGAARD, *Circuit Judge.*

Marcia W. Williams appeals the denial of her claim for disability benefits.  She argues that the Administrative Law Judge (ALJ) made a number of mistakes that the District Court did not properly review.  We will affirm the District Court's decision.

This opinion does not have any precedential value. Therefore, our discussion of the case is limited to covering only what is necessary to explain our decision to the parties. Like the District Court, we review the ALJ's decision to determine if it is supported by substantial evidence. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 118 (3d Cir. 2000).

Williams' 2009 claim of disability is grounded in her complaint that problems primarily with her back are so severe that she is not able to work. The District Court decided that the ALJ was right when he ruled that Williams' statements about the severity of her symptoms were not credible, and that the rest of the record did not prove that she meets the definition of disabled under the Social Security Act. 42 U.S.C. § 423(d)(1). Williams disagrees, pointing to evidence that, she says, both the ALJ and the District Court ignored, misunderstood or used unfairly. We will discuss each issue separately.

The ALJ agrees with Williams that she has some health problems. Specifically, he found that she had severe impairments from lumbar spine degenerative disease, thoracic spine degenerative disease, and carpal tunnel syndrome. However, in her application for benefits, Williams said that she could not do any work because severe pain radiates from her back to her legs and left arm, and this is where her claim unravels.[1]

Williams says that she cannot sit or stand for longer than fifteen minutes, she must lie down a lot each day, she cannot lift more than five pounds and cannot sleep. Yet, many doctors, including Williams' own treating doctor, examined her after she filed her

---

[1] Though the focus of the claim is upon her back, Williams also says that the ALJ ignored her carpal tunnel syndrome. We conclude that the ALJ properly ruled that the record she developed did not provide enough evidence that the carpel tunnel syndrome, either alone or considered with the other medical issues, prevents her from doing any work.

disability claim and could not find evidence that her back was creating these problems. These doctors consistently reported that Williams had high motor strength in her arms and legs, good coordination, normal range of movement, and generally normal results in her neck, respiratory, cardiovascular, abdomen, musculoskeletal, extremeties, and psychiatric examinations. During office visits, doctors mostly reported that she walked and moved normally. The diagnostic tests were also consistent with what the doctors observed: there was evidence only of mild degenerative changes to her spine. Finally, Williams reported that she was able to take care of herself and a foster child, and was able to do normal activities of daily living. All of this did not line up with her complaints.

The ALJ had some other concerns. When the doctors ruled out her spinal problems as the source of her severe pain, and suggested she do more tests to explore other potential causes, Williams generally did not follow up to schedule these tests. The ALJ appropriately questioned whether this was a reasonable thing to do for someone reporting such pain. He also pointed to other parts of the record that would cause anyone to doubt her credibility. She said (while receiving unemployment benefits) that she was able to work and looking for work, but said at the same time on her disability claim that her back problems prevented her from working. Also, the Social Security Administration flagged her claim and conducted a fraud investigation.

Williams argues that the ALJ used this evidence unfairly. We disagree. Although these things factored into his credibility determination, the ALJ based his decision on far more than just these issues. He pointed out contradictions between what Williams' said

about her limitations and her medical record and conduct. The ALJ was on solid ground when he ruled that he could not rely on Williams' reports about the level of her pain and limitations. This finding is entitled to our deference.

She also says that the rest of the record supports her claim. However, her proof is little more than general evidence of a mild back problem, and a singular note here and there that says she had pain or had trouble moving. There is no consistent line of evidence that supports her claim of disabling pain coming from her back. Finally, she wants us to rely on a report written by her chiropractor, who did no more than repeat Williams' complaints without any medical testing to support it. This evidence is, at best, weak, falling far short of her burden to prove that she meets legal definition of disabled.[2]

Williams makes a number of other claims: the ALJ ignored evidence that she met a listed impairment; his residual functional capacity assessment is not supported with enough evidence; his definition of "light work" is wrong; and, the hypothetical the ALJ gave to the vocational expert was not accurate. For all of these issues, we find ourselves mostly repeating our conclusion that the ALJ did a thorough review of the record. He showed a proper understanding of Williams' impairments before reaching conclusions about how they impacted her ability to work. Specifically, we cannot find any problems with his conclusion that Williams did not meet a listed impairment. The record showed no more than minor disc degeneration and there was no evidence that it (and carpal

---

[2] Williams also says that the ALJ did not look at the whole record because he used "circular logic" by referring to his own document—the Residual Functional Capacity assessment—to rule on her credibility. Williams misinterprets what the ALJ said. As we already made clear, the ALJ had a good understanding of the whole record.

tunnel syndrome) made her unable to work. We are also convinced that the ALJ's residual functional capacity assessment is firmly based in substantial evidence and accurately reflects the symptoms that the ALJ found credible.[3] On this record, he properly decided that she could perform a subset of tasks that fell under the definition of light work and he described these limitations clearly. We did not see any errors here. Likewise, the hypothetical the ALJ gave to the vocational expert accurately described Williams' condition. Therefore, the vocational experts' testimony was reliable. None of these arguments convinced us that the District Court and the ALJ were wrong.

For all of these reasons, we will affirm the District Court's order.

---

[3] Williams vaguely says that a medical expert who testified was not able to review the whole record. However, Williams fails to explain what was missing, why she did not object at the time it happened, and how it prejudiced her.