Michael PROPER, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security.

No. CIV.A. 00–194 Erie.

United States District Court,
W.D. Pennsylvania.

April 23, 2001.

Judith E. Wilson, Erie, PA, for petition-
er.

John Trucilla, U.S. Attorney' Office,
Erie, PA, for respondent.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

This is a civil action pursuant to 42
U.S.C. § 1383(c)(3). Plaintiff, Michael
Proper, seeks judicial review of a final

decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI"). Plaintiff filed the application at issue on October 18, 1994, alleging disability since February 1, 1991. (Administrative Record, hereinafter "AR," at 87). Subsequent to an administrative hearing, an Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore ineligible to receive SSI. Because Plaintiff's request for Appeals Council review was denied, the ALJ's decision is the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). (AR 4). In addition to filing the instant civil action, Plaintiff also filed a new claim for SSI on June 29, 2000, which was approved. Presently pending before this Court are cross-motions for summary judgment. For the reasons set forth below, we will deny both motions and remand the case to the ALJ for further proceedings.

## I. BACKGROUND

Plaintiff alleges disability due to bipolar disorder, manic depression, and alcohol dependency. (AR 115). He was forty-five years old at the time of the ALJ's adverse decision, and is a high school graduate. (AR 38). He was last employed in October, 1988 as a cook's helper. (AR 119). Plaintiff held this position for approximately two months, and previously held several other jobs for similar periods of time. (AR 119). From January, 1973 through March, 1975, Plaintiff was in the United States Air Force where he worked as a clerk/typist. (AR 119). Plaintiff has never held a job longer than this two-year, two-month period. (AR 40).

In 1991, Plaintiff was diagnosed with dysthmic disorder, chronic alcoholism, and "personality disorder, borderline with passive aggressive traits." (AR 144, 150). Plaintiff received treatment from several psychiatrists beginning in 1991 (AR 136–228, 270–286). Dr. Kripa Singh, Plaintiff's primary treating psychiatrist, reported after his initial visit with Plaintiff in 1993 that his main problem was a significant amount of underlying depression that appeared to have gone untreated. (AR 193). Dr. Singh prescribed Buspar and Imipramine at this visit, and added Wellbutrin in February, 1994. (AR 136, 190). In July, 1996, Dr. Singh prescribed a small amount of Thorazine to help Plaintiff sleep. (AR 285). By April, 1997, Plaintiff was also taking Lithium Carbonate and Inderal to control mood swings and tremors. A report by Dr. Singh dated September 4, 1997 indicates that Plaintiff's Wellbutrin, Inderal, and Imipramine prescriptions had been discontinued by this date, and that Plaintiff was then taking Effexor and Sinequan for depression and Buspar for anxiety in addition to the Lithium. (AR 276).

Dr. Singh's reports indicate that Plaintiff often responded to medication. After Plaintiff's second visit, Dr. Singh reported that Plaintiff felt much better than before and was not experiencing any side effects from the medication. (AR 192). Dr. Singh added Wellbutrin after Plaintiff complained of nervousness, difficulty sleeping, moodiness, and feelings of sadness in February, 1994. (AR 190). In March, 1994, Plaintiff told Dr. Singh that the medications were regulating things and that he was pleased with his progress. (AR 189). In late April, 1994, Plaintiff stated that he continued to feel "pretty good," was having no trouble sleeping and was experiencing no side effects from his medications. (AR 188). In June, 1994, Plaintiff told Dr. Singh that he was more concerned about his financial problems than usual because he was running out of welfare, and in July, 1994, Plaintiff told Dr. Singh that he wanted him to fill out a disability form. (AR 187). Several months later, in October, 1994, Dr. Singh reported that Plaintiffs' dosages were

working for him and that Plaintiff desired no changes in his dosages. (AR 185). Dr. Singh reported in January, 1995 that Plaintiff appeared to be in remission. (AR 184).

Plaintiff complained of feeling nervous, anxious and moody in April, 1995. Dr. Singh reported that the symptoms were not observable, and made no changes to Plaintiff's medications. He also noted that Plaintiff had brought disability forms to the office on this visit, and that Plaintiff's complaints could be related to his desire to have the forms completed. (AR 182). After a March, 1996 visit, Dr. Singh reported that Plaintiff was not in any affective distress. (AR 226). In April, 1996, Dr. Singh reported that Plaintiff had some doubts about himself, but continued to live independently and showed no psychotic or suicidal pathology. (AR 227).

Plaintiff told Dr. Singh at a visit in June, 1996 that he had experienced a "major crisis" during which he had difficulties with his girlfriend, began drinking again, stopped taking his medications, and spent two weeks in the Hamot Medical Center Rehabilitation Unit. He also stated that he had experienced severe anxiety and panic during this time and had gone to Hamot Medical Center on one occasion complaining of severe chest pain and pressure, although he did not experience a heart attack. Dr. Singh reported that Plaintiff was goal directed and in no affective distress at this visit. (AR 228). One year later, in June, 1997, Plaintiff told Dr. Singh that he felt the medications were finally beginning to take effect, and Dr. Singh reported that Plaintiff did not appear to be in any affective distress. (AR 277). In August, 1998, Dr. Singh reported that Plaintiff reported feeling the best he had in years and that no affective problems were observed. He also reported that Plaintiff had been sober for ten months at the time of this visit. (AR 271). Approxi-

mately three months before the hearing, Dr. Singh left the facility where Plaintiff received treatment. At this time, Plaintiff began seeing Dr. Anne McDonald, who made slight changes in his medications. (AR 71).

Plaintiff testified extensively at the administrative hearing. When asked to explain in his own words why he is unable to work, Plaintiff said that he is too moody, is unable to sleep, and suffers from panic and anxiety attacks. (AR 62). The panic attacks occur approximately once a month, and last from a few minutes to a few hours. (AR 62–63). He also stated that he is very shaky and experiences tremors so severe that, at times, he is unable to hold a coffee cup. (AR 63). When asked about his depression, Plaintiff said that he has approximately ten good days each month, and twenty bad days, although he is improving and the ratio is becoming closer to half and half. He enjoys listening to music and reading, shops for groceries once a month, dresses and cares for himself, and usually goes out of the house once each day for lunch at a soup kitchen, although on some of his dark days, he is unable to go out of the house at all. (AR 67–68, 74). Plaintiff stated that he seldom has problems getting along with people, and was generally able to get along with the people he worked with when he was working. (AR 69). He experiences problems concentrating at times, but generally does not experience problems with his memory (AR 70). Plaintiff testified at the administrative hearing that he had not had anything to drink for seventeen months. (AR 74).

With respect to his treatment, Plaintiff said he thought Dr. Singh tried to "sugarcoat" his condition, and that he tried unsuccessfully to tell Dr. Singh that while the medication was working "a little bit," it was not working as it should have been.

(AR 72). He also said his panic attacks are brought on by stress, and that he worries about everything. (AR 76–77). Having an appointment causes him stress because he worries about getting there and thinks about the appointment a great deal. (AR 76–77). He also said that strangers, such as at the mall or at a sporting event, do not bother him unless they are "acting up and making a lot of noise." (AR 78). He has eliminated most of the stressors from his life, including a living situation in which he lived across the hall from his girlfriend and her family, and feels that his condition is improving. However, he worries that if he were to come out of his shell too fast, the progress he has made thus far would be lost. (AR 79). For instance, Plaintiff said that if he were to work again and the job did not work out, it would put him "back to square one." (AR 79).

A second witness at the administrative hearing was Marilyn Zaffino, a rehabilitation specialist and addictions counselor with Stairways who makes home visits to Plaintiff. (AR 80). She stated that, at the time of the hearing, Stairways was subsidizing Plaintiff's rent, assessing his needs and trying to meet his needs. (AR 80–81). The organization was encouraging Plaintiff to work with a social coach, and although Plaintiff agreed to do so several times, he consistently changed his mind at the eleventh hour, explaining that he did not feel ready and did not want to feel embarrassed or uncomfortable (AR 81). She also stated that Plaintiff believes in and practices the twelve step program, but is unable to attend AA meetings because he is uncomfortable with the size of the crowd. (AR 82). According to Zaffino, Plaintiff's testimony regarding his restrictions was accurate; she said that there are times when he is able to walk to the soup kitchen, but that he has told her there are times when he has been unable to leave his apartment for up to three days. She also

stated that she believed that Plaintiff would have exercised options if he thought he had any, but that he truly believes that this is the greatest level of functioning he is able to maintain without risking his mental health or sobriety. She had seen him become overwhelmed by small things such as the mail, and said that, in her opinion, testing his limits would be frightening. (AR 81–84). She also stated that she had no reason to believe Plaintiff had consumed any alcohol in the seventeen months prior to the hearing. (AR 83).

The third and final witness at the administrative hearing was Dr. Samuel Santoro, a vocational expert. Santoro testified that someone of Plaintiff's age and education could perform a cook's helper job even assuming the person had the following limitations: 1) a limited ability to deal with the public; 2) a limited ability to interact with peers and supervisors; 3) a limited ability to make complex decisions; 4) a limited ability to follow detailed instructions; 5) a limited ability to deal with work stresses on a frequent basis; 6) a limited ability to be exposed to noise; and 7) a limited ability to be exposed to moving machinery. (AR 85). Santoro additionally testified that, assuming the same individual suffered from the limitations described by Plaintiff and Zaffino which result in an inability of the individual to leave the house for days at a time, he or she would not be able to maintain such a position. (AR 85).

## II. STANDARD OF REVIEW

■ A court must affirm the determination of the Commissioner if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is not a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Under-*

*wood,* 487 U.S. 552, 564–65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is considered to be less than a preponderance of the evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401, 91 S.Ct. 1420; *Jesurum v. Sec'y of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995). In reviewing an ALJ's decision, the court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981). The Third Circuit has stated that there is a "particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Id.* at 706.

### III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. *See* 20 C.F.R. § 404.1520. In *Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir.1999), the Third Circuit set out the process as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. If a claimant is found to be engaged in substantial activity, the disability claim will be denied. In step two, the

> Commissioner must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. The claimant bears the burden of demonstrating an inability to return to her past relevant work.

> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The ALJ must show there are other jobs existing in significant numbers in the national economy the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step.

(internal citations omitted).

In this case, the ALJ concluded at step three that while Plaintiff suffered from the severe impairment of bipolar affective disorder, the restrictions resulting from the disorder were not severe enough to meet Section 12.04 of the Listing of Impair-

ments. (AR 17). The ALJ stated that Plaintiff had only a slight restriction of his · activities of daily living, a moderate difficulty maintaining social functioning, and that he seldom had deficiencies in concentration, and had only one or two episodes of deterioration in work settings. (AR 17). At step four, the ALJ determined that Plaintiff can perform work at all exertional levels that does not involve significant exposure to noise or moving machinery, does not require substantial interaction with the public, peers, or supervisors, and does not require Plaintiff to make complex decisions, follow detailed instructions, or deal with work stresses on a frequent basis. (AR 17). The ALJ determined that Plaintiff's testimony was not credible, but failed to mention the testimony of Marilyn Zaffino. (AR 17). She stated that Plaintiff retained the residual functional capacity to return to his former employment as a cook's helper, and therefore was not disabled within the meaning of the Social Security Act. (AR 18). In making this determination, the ALJ cited the testimony of the vocational expert, Dr. Santoro.

▮▮▮ Plaintiff argues that the ALJ erred by failing to address Marilyn Zaffino's testimony in her decision. Plaintiff's Brief in Support of Motion for Summary Judgment [Doc. No. 10] at 7. We agree. The Third Circuit has stated that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four," and further that the "ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir.2001)

(*quoting Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981)).

Zaffino's testimony, to be clear, is not "medical evidence" under 20 C.F.R. § 416.913(a). It is, nonetheless, "information from other sources" which may be offered by a claimant to help the Commissioner understand how an impairment affects his or her ability to work. *See* 20 C.F.R. § 416.913(d); *see also Alexander v. Shalala*, 927 F.Supp. 785, 794 (D.N.J. 1995). Acceptable "other sources" include, but are not limited to, medical sources not listed under 20 C.F.R. § 416.913(a), educational personnel, public and private social welfare agency personnel, spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 416. 913(d) (2001).[1] In *Burnett v. Comm'r*, 220 F.3d 112, 122 (3d Cir.2000), the Third Circuit stated the following with respect to an ALJ's responsibility to address non-medical evidence:

> Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, the ALJ must still explain why he is rejecting the testimony ... In this case, the ALJ explained he rejected Burnett's testimony regarding the extent of her pain because he determined it was not supported by the objective medical evidence. However, the ALJ failed to mention the testimony of Burnett's husband, George Burnett, and her neighbor, Earl Sherman. On appeal, the Commissioner contends the ALJ did not need to mention their testimony because

---

1. At the time the parties filed their summary judgment motions, the "other sources" provision of the regulation was codified at 20 C.F.R. § 416.913(e) (2000). The 2000 and 2001 provisions are substantively similar; the 2001 provision specifically refers to "public and private social welfare agency personnel," while the 2000 provision refers to "public and private social welfare agencies and social workers." 20 C.F.R. § 416.913(e) (2000).

it "added nothing more than stating [Burnett's] testimony was truthful." This argument lacks merit because the ALJ made a credibility determination regarding Burnett, and these witnesses were there to bolster her credibility. R. 17 ("claimant's allegations of disability made at hearing are unsubstantiated"). In *Van Horn,* we stated we expect the ALJ to address the testimony of such additional witnesses. On remand, the ALJ must address the testimony of George Burnett and Earl Sherman.

*Id.* (internal citations omitted).

■ In this case, the ALJ similarly made a credibility determination regarding the claimant. In her discussion of Plaintiff's residual functional capacity, the ALJ stated, "I find that the claimant's testimony is not credible to the extent that it would prevent the claimant from performing low stress jobs." (AR 17). Her failure to mention Zaffino's bolstering testimony is therefore error for the same reason that the ALJ's failure to mention existing bolstering testimony in *Burnett* was error. The Third Circuit has made it clear that the failure of an ALJ to address evidence prevents a reviewing district court from properly exercising its responsibility under 42 U.S.C. § 405(g) to determine whether a challenged decision of the Commissioner is supported by substantial evidence. *See Fargnoli,* 247 F.3d at 40. "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett,* 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* (*quoting Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981)). In light of the above, we find that the ALJ erred in this case by not addressing Zaffino's testimony.

■ The decision to reverse the decision of the Commissioner and direct an award of benefits should only be made "when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir.1984). In such situations, it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would only cause a delay in the receipt of benefits. *See id.* In this instance, we find that a remand is appropriate. On remand, the ALJ is directed to address the non-medical evidence of Marilyn Zaffino. If, on consideration of this evidence, the ALJ determines that Plaintiff's testimony is credible and consequently that he is unable to perform his past work as a cook's helper, she is further directed to proceed to step five of the sequential process and determine whether there are other jobs existing in significant numbers in the national economy that Plaintiff is able to perform. The ALJ is free to seek additional evidence and/or call a vocational expert if she feels it is necessary.

### ORDER

AND NOW, this day of April, 2001, for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 9] is DENIED and Defendant's Cross–Motion for Summary Judgment [Doc. No. 11] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.