Patricia A. RIDENBAUGH, Appellant,

v.

Joanne A. BARNHART, Commissioner of Social Security.

No. 02–2669.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Jan. 27, 2003.

Decided Feb. 4, 2003.

Before SLOVITER and RENDELL, Circuit Judges, and DEBEVOISE,* Senior District Court Judge.

## OPINION OF THE COURT

DEBEVOISE, Senior District Court Judge.

Appellant, Patricia A. Ridenbaugh, appeals from an order of the District Court which adopted as the opinion of the court a report and recommendation of the Magistrate Judge, denied Ridenbaugh's motion for summary judgment and granted the Commissioner of Social Security's motion for summary judgment. The effect of the order was to affirm the Administrative Law Judge's denial of Ridenbaugh's application for Social Security Disability Benefits ("DIB") and for Supplemental Security Income ("SSI"). We find that the ALJ's decision was supported by substantial evidence and will affirm.

## I. *Background*

Ridenbaugh was 32 years of age at the time of the ALJ's decision. She is a high school graduate with prior work experience as an advertisement clerk, a nurse's aide, a deli worker and a fast food restaurant employee. She stopped working in September, 1991 in order to stay home with her family. In her application for benefits she alleged that she became disabled in October 1992, as a result of injuries sustained in an automobile accident. She remained capable of performing activities including walking, shopping, carrying light packages, cooking, washing clothes, cleaning, driving a car, visiting with friends, watching television and listening to the radio. She walked two miles a day and fished from a river bank.

On February 5, 1996 Ridenbaugh applied protectively for SSI, and she applied for DIB on August 23, 1996. She alleged injuries of her neck, shoulder, elbow and hand resulting from the car accident. Her applications were denied at the administrative level. She appealed and appeared before an ALJ. The ALJ received considerable medical evidence; Ridenbaugh testified. A vocational expert ("VE") testified that Ridenbaugh did not possess the residual functional capacity to return to her past relevant work, but in response to hypothetical questions the VE opined that there were numerous jobs that existed in significant numbers in the state and national economies that Ridenbaugh could perform.

The ALJ found that Ridenbaugh had degenerative disc disease and carpal tunnel syndrome, both of which were severe but which did not meet or equal the criteria for any of the listed impairments. He further found that Ridenbaugh's statements concerning her impairments and their impact upon her ability to work were not entirely credible, that Ridenbaugh retained the ability to perform light work and that she was not disabled because she could perform a significant number of jobs in the local and national economies.

---

* Honorable Dickinson R. Debevoise, Senior United States District Judge for the District of New Jersey, sitting by designation.

The Appeals Council denied Ridenbaugh's request for review, making the ALJ's decision the final decision of the Commissioner. On her appeal to the District Court the parties filed cross motions for summary judgment. The United States Magistrate Judge issued a report and recommendation recommending that Ridenbaugh's motion be denied and that the Commissioner's motion be granted. The District Court, after receiving objections to the report and recommendation, acted in accordance with the recommendation. This appeal followed.

## II. *Ridenbaugh's Contentions*

Initially Ridenbaugh contends that the ALJ erred when he determined that her impairments did not meet or equal a listed impairment, specifically that he failed to mention listed impairment set forth at § 1.13, which reads:

"1.13 *Soft tissue injuries of an upper or lower extremity* requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major functions of the extremity, and such major function was not restored or expected to be restored within 12 months after onset."

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.13.

Ridenbaugh cites the two carpal tunnel release procedures (April 26, 1993 and June 21, 1993) and surgery to release an ulnar nerve entrapment of the left elbow on September 3, 1993 following the October 14, 1992 automobile accident. She asserts that the evidence establishes that major function of the extremity was not restored or expected to be restored within 12 months after onset, thus entitling her to classification under the listed impairment provision. According to Ridenbaugh, the ALJ's findings were inadequate because he failed to mention either the ulnar nerve injury or the § 1.13 listing.

Next Ridenbaugh contends that the ALJ substituted his own view of Plaintiff's medications. As an example she points to the ALJ's statement that "it does not appear that she *ever* required ongoing use of potent pain relieving medicines (R. 171)," noting that the record discloses that on occasion she was prescribed Relafen, Pepcid, Lodine and Triavil. The list of medications that Ridenbaugh used at one time or another submitted at the hearing included Amatriptyline, Ultram, Cyclobenzaprine, and Ibuprofen.

Ridenbaugh takes particular issue with the statement in the ALJ decision that reads as follows:

Moreover, her testimony that she becomes drowsy after taking ibuprofen is incredible, as the medication is an aspirin-like nonsteroidal anti-inflammatory drug with no known tendency to cause drowsiness. (Medical Economics Data, *Physician's Desk Reference* 46th Ed., 1992, page 2353, entry for Motrin, form of ibuprofen). (A.23a)

Here, according to Ridenbaugh, "the ALJ improperly stepped outside his role of finder of fact and instead attempted to assume the mantle of a physician or pharmacologist, when he offered his opinion on appellant's medications" (Ridenbaugh's Brief at 16). The possible reaction of various of the drugs that she took at one time or another is somnolence.

Ridenbaugh challenges the ALJ's reliance on the VE's opinion about the availability of jobs in the state and national economies because the hypothetical posed to the expert failed to include among Ridenbaugh's problems her frequent headaches. This was the result of the ALJ's rejection of plaintiff's complaint of headaches.

This rejection, Ridenbaugh asserts, is not supported by substantial evidence be-

cause the record contains a number of items that support this complaint, such as Ridenbaugh's own testimony, a reference to headaches since childhood in Dr. Medlock's report and references to headaches in the reports of Dr. Baker and Dr. Dappert.

Although the two hypotheticals upon the answers to which the ALJ relied did not include headaches as an ailment from which Ridenbaugh suffered, the ALJ posed a third hypothetical with "the additional limitation that because of the side effects of medication and pain, that is perceived there is an inability to maintain concentration and attention to tasks 20–45 minutes per event, one event per day every day of the week", which was unscheduled. To this hypothetical the VE gave the opinion that Ridenbaugh could not work on a full time basis at any job.

It is Ridenbaugh's contention that because the hypotheticals which produced the answers upon which the ALJ relied did not contain all her impairments, the VE's expert testimony did not constitute substantial evidence. *Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984)

### III. *Jurisdiction and Scope of Review*

The District Court had jurisdiction by virtue of § 205 of the Social Security Act, 42 U.S.C. § 405(g). This Court has jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

Our review of the District Court's order is plenary. We examine the ALJ's conclusions as to Ridenbaugh's residual functional capacity with the deference required of the substantial evidence standard of review. The ALJ, nonetheless, must have evaluated all relevant evidence, *Fargnoli v. Massanari,* 247 F.3d 34, 40–41 (3d Cir. 2001), and explained his reasons for rejecting any such evidence. *Burnett v. Commissioner of Soc. Sec. Admin.,* 220 F.3d

112, 122 (3d Cir.2000). He also must have given Ridenbaugh's subjective complaints "serious consideration," *Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir.1993), and made specific findings of fact, including credibility, as to Ridenbaugh's residual functional capacity. *Burnett,* 220 F.3d at 120; *see* also *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981).

### IV. *Discussion*

■ Substantial evidence supports the ALJ's failure to find that Ridenbaugh had an impairment meeting all of the requirements of Listing 1.13. Rather than establishing, the medical evidence negates, the fact that after the October 1992 accident and before the subsequent surgery Ridenbaugh had no functioning in her upper extremities. Similarly, after the various surgeries Ridenbaugh had a normal recovery. Substantial evidence supports the ALJ's finding that:

Each of the surgical procedures was carried out without complications, and in each case a satisfactory result was reported. It should be noted that all of these surgical procedures were performed within a year of the injury upon which this claim of disability is founded. Significant records show that claimant ... had not had significant difficulty with her hands for some two to three years ... she has not required further surgical intervention in the wrists or elbows, and the record does not show that she was evaluated or treated for any of the alleged disabling conditions for several years. Moreover, when she was seen by Dr. Medlock in March 1996, she admitted that surgery had resolved her problems for several years ... No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment (Tr. 19–20).

■ Ridenbaugh's subjective complaints of pain and sleepiness caused by headaches from which she has suffered from her teen years were not the basis of her original application for benefits which focused on her neck, shoulder, elbow and hand injuries. We have reviewed the numerous medical reports upon which the ALJ relied (summarized in the Magistrate Judge's report and recommendation) and find that the ALJ relied upon substantial evidence to support his finding that Ridenbaugh's accounts of her headaches and drowsiness were not fully credible. She did not require extensive use of pain medication for the treatment of any of her impairments, including headaches. She did not complain of headaches when she filed her claim. If, as she has stated, she has suffered from headaches since her teen years, they did not prevent her from working in the past and they do not prevent her from engaging in the many activities in which she continues to engage. She has declined to engage in treatment designed to ameliorate her various impairments.

■ Ridenbaugh challenges the ALJ's opinion on the ground that he substituted his own medical judgment to evaluate her use of pain medication. It should be noted initially that the use of these medications was unrelated to the neck, shoulder, elbow and hand impairments that Ridenbaugh advanced in her application for benefits. The medications relate to the later advanced claim of the headaches that had been on-going since childhood. The ALJ considered the relevant factors when determining the seriousness of the asserted headaches. Ridenbaugh combed the record relating to the multi-year period involved for every reference to a medication, but in fact she used only the mildest forms of medication for pain relief. As the Mag-

istrate Judge's report and recommendation stated:

> ... plaintiff argues that the ALJ erred in finding that plaintiff had never required "ongoing use" of potent pain-relieving medications (Tr. 17). The record, however, supports the ALJ's finding in this respect as plaintiff often took ibuprofen for her complaints. Further, the ALJ made this finding in the context of analyzing plaintiff's complaints of pain.... The ALJ's overall conclusion that the medical records do not support plaintiff's complaints of disabling limitation are supported by the record, particularly where no physician, treating or otherwise, has opined that plaintiff suffers from disabling pain.

(Report and Recommendation at p. 7–8)

The ALJ considered the other relevant factors when evaluating Ridenbaugh's credibility and the extent of her headache-caused pain, e.g., her treatment history, her limited use of available therapy or pain management, the lack of medical evidence of disabling pain, the failure to complain of headaches when she filed her claim, her failure to follow prescribed treatment or additional testing. The ALJ set forth in full detail the factors that led him to conclude that "[t]he claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible." (App. at p. 17). He addressed Dr. Medlock's statement that Ridenbaugh could not stand and walk for two hours or sit for six hours in a work day, finding that the opinion was inconsistent with other medical evidence and with Dr. Medlock's own findings, in particular his finding that Ridenbaugh could do what amounts to light work. (App. at 20)

The ALJ's first two questions directed to the VE incorporated Plaintiff's impairments supported by the medical records.

His rejection of Plaintiff's testimony about the extent of Plaintiff's headaches and drowsiness was based on substantial evidence and permitted him to rely on the answers to those hypothetical questions which did not incorporate the elements of disabling headaches and drowsiness.

### V. *Conclusion*

For the foregoing reasons we will affirm the judgment of the District Court denying Ridenbaugh's motion for summary judgment and granting the Commissioner's motion for summary judgment.