

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-24-2003

# Sykes v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1665

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Sykes v. Comm Social Security" (2003). *2003 Decisions.* Paper 22.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/22

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1665

DONNELL SYKES

v.

*JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SERCURITY

ADMINISTRATION
*(Pursuant to Rule 43(c) F.R.A.P.)

Yvonne Hall o/b/o Donnell Sykes,

Appellant

*(Pursuant to Rule 12(a) F.R.A.P.)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-01096)
District Judge: Honorable Jan E. DuBois

Argued October 27, 2003

Before: SCIRICA, Chief Judge, NYGAARD and AMBRO, Circuit Judges

(Opinion filed December 24, 2003)

Alida Rife Shatzer, Esquire (Argued)
Shatzer & Sheridan
4800-02 Baltimore Avenue
Philadelphia, PA   19143

*Attorney for Appellant*

Patrick L. Meehan
   United States Attorney
Joan K. Garner
   Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street
Philadelphia, PA 19106

James A. Winn
   Regional Chief Counsel
Thomas C. Buchanan (Argued)
   Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
Post Office Box 41777
Philadelphia, PA 19101

*Attorneys for Appellee*

OPINION

AMBRO, <u>Circuit Judge</u>

Yvonne Hall, on behalf of her grandson Donnell A. Sykes, appeals the District Court's order granting summary judgment in favor of the Commissioner of the Social Security Administration (the "Commissioner"), who denied Sykes's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381-83f. Because we conclude that the Commissioner's decision is supported by substantial evidence, we affirm.

## I. Factual Background

Sykes was born to a drug addict mother and was in custody of his grandmother, Hall, since he was two years old. In December 1995, when Sykes was six years old, Hall applied for SSI, alleging that Sykes was disabled since he was four because of his learning, emotional and visual problems. The Commissioner denied the application initially and upon reconsideration. In October 1996, Hall filed a new application also alleging Sykes's hyperactive and violent behavior, asthma, speech and memory problems. The Commissioner again denied the application initially and upon reconsideration. Hall requested a hearing before an Administrative Law Judge (ALJ), which was held in July 1998.

At the hearing, Hall testified that Sykes was violent and did not get along with his friends and siblings. Hall also emphasized that Sykes was not keeping up with his classes. Other evidence the ALJ considered is summarized below.

In January 1995, Sykes began weekly therapy sessions with Jennifer Smith, M.A. After treating him for a year, Smith diagnosed Sykes with attention deficit disorder.

In December 1995, Sykes's first-grade teacher Dorothy Clemens reported that Sykes had adequate ability to follow instructions, keep up with class pace, and complete

all assignments.[1]  She further noted that Sykes was cooperative and got along with his classmates.

In February 1996, Ely Sapol, Ph.D., reported that, despite some immaturity, Sykes's academic functioning was not a significant problem.  Sapol also concluded that Sykes's personal independence and social responsibility were within normal limits.

In June 1996, Sykes was prescribed Ritalin for his hyperactivity.  Ritalin is known to have a stabilizing effect in children with attention deficit and hyperactivity disorder ("ADHD").

In July 1996, Stephanie Maroney, Ph. D., conducted a psychological assessment of Sykes.  She reported that his overall intellectual capabilities were within the low average range with a IQ of 81.  She noted that Sykes might suffer from ADHD given the fluctuations in his ability to focus.

In September 1996, while Sykes was in regular second-grade class, the school report determined that Sykes's reading skills were at the beginning first-grade level and his math skills at the mid first-grade level.

In March 1997, Henry Weeks, Ph.D, completed a Childhood Disability Evaluation Form in which he concluded that Sykes's attention deficit disorder was not severe and

---

[1]Hall claims that Sykes received all Ds in his first year.  However, a "school copy" of the report card shows that he had Bs, Cs and no Ds.  Hall claims that a "parent copy" showing all Ds is a "corrected" report card.  However, the District Court suggested that the parent copy might have been altered by hand because the lines underneath the corrected grades appear to have been partially whited out.

resulted in "less than marked" limitation in his functioning.

The school report in May 1998 recommended that Sykes be placed in full-time learning support for his academic classes. But the report noted that Sykes had good attendance and was liked by his peers.

On July 16, 1998, the ALJ issued a decision in which he concluded that Sykes was not disabled. After the Appeals Council denied her request for review, Hall filed a complaint in the District Court for the Eastern District of Pennsylvania. Both parties moved for summary judgment, and the District Court granted summary judgment in favor of the Commissioner. Hall appeals.

## II. Standard of Review

"Although our review of the District Court's order for summary judgment is plenary, 'our review of the ALJ's decision is more deferential as we determine whether there is substantial evidence to support the decision of the Commissioner.'" *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (quoting *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000)). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 398, 401 (1971)). Thus, the issue before us is to determine whether there is substantial evidence in the record that supports the ALJ's finding that Sykes was not disabled.

## III. Discussion

### *A*.

To qualify for SSI, a child must be disabled under the Social Security Act. The Act provides that a child under the age of 18 is disabled if s/he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

The Commissioner follows a three step sequential process in determining childhood disability. 20 C.F.R. § 416.924. The Commissioner must consider: (1) whether the child is doing substantial gainful activity; (2) if not, whether the child has a medically determinable severe impairment; (3) if so, whether the child's severe impairment meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id*.

In this case, the ALJ found that, although Sykes was not doing substantial gainful activity and his ADHD was a severe impairment, his condition did not meet, medically equal, or functionally equal the severity of impairments listed in the regulations. Accordingly, the ALJ concluded that Sykes was not disabled under the Act.

### *B.*

Hall initially argues that we are unable to review the ALJ's finding that Sykes's

6

impairment did not meet or medically equal a listed impairment because the ALJ did not set forth his reasoning in the decision.  We disagree.

In *Burnett v. Commissioner of Social Security Administration*, we held that the ALJ must provide the reasons for his decision.  220 F.3d 112, 119 (3d Cir. 2000).  The ALJ in *Burnett* merely stated in one sentence that the claimant's condition did not meet or equal to a listed impairment without giving any reason.  *Id.*  We concluded that we had no way to review such a conclusionary statement and therefore remanded the case, requiring the ALJ to "fully develop the record and explain his findings."  *Id.* at 120.

Here, the ALJ determined that Sykes's condition did not meet or medically equal in severity the criteria for a listed impairment.  The ALJ then identified listed impairments he considered, one of which was listing 112.11, pertaining to ADHD.  Hall claims that merely identifying impairments in the listing is insufficient because the ALJ did not give any reason why Sykes's ADHD did not meet or medically equal listing 112.11.

A closer look, however, at listing 112.11,[2] reveals that, to meet or medically equal

---

[2]This provision states in pertinent part:

> 112.11 Attention Deficit Hyper Activity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>> A. Medically documented findings of all three of the following:
>>> 1. Marked inattention; and
>>> 2. Marked impulsiveness; and
>>> 3. Marked hyperactivity;
>> B. ... [F]or childeren (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

7

the listed impairment, the child must have impairment-related functional limitations. Specifically, listing 112.11 requires the child to show marked functional limitations in two of the areas set forth in listing 112.02.[3] The ALJ, while explaining why Sykes's condition is not functionally equivalent to the listed impairment, carefully evaluated Sykes's limitations in all of the four areas of functioning included in 112.02. Thus we have at least enough reasoning to enable us to determine whether the ALJ's conclusion is supported by substantial evidence.

## C.

Hall further challenges the ALJ's finding that Sykes's ADHD is not functionally equivalent in severity to the listed impairment. She argues that the finding is not supported by substantial evidence. Again we disagree.

The ALJ evaluated Sykes's functional limitations in several areas of function and

---

20 C.F.R. pt. 404, subpt. P, app. 1.

[3]112.02 provides in relevant part:
112.02 Organic Mental Disorder
 B. Select the appropriate age group to evaluate the severity of impairment:
  2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
   a. Marked impairment in age-appropriate cognitive/communicative function . . . .
   b. Marked impairment in age-appropriate social function . . . .
   c. Marked impairment in age-appropriate personal function . . . .
   d. Marked difficulties in maintaining concentration, persistence, or pace . . . .
 20 C.F.R. pt. 404, subpt. P, app. 1.

8

found that Sykes had: (1) moderate limitations in cognitive/communicative development; (2) slight limitations in motoring functioning; (3) marked limitations in social functioning; (4) slight limitations in personal functioning; (5) and moderate limitations in concentration, persistence, or pace.  Since the child's condition must result in either "extreme" limitations in one area or "marked" limitations in two areas to be functionally equivalent to the listed impairment, the ALJ determined that Sykes's condition does not meet the criteria.  20 C.F.R. §416.926a(a).  Hall challenges the ALJ's findings in cognitive/communicative development, social functioning, and concentration, persistence, or pace.

First, Hall asserts that the evidence does not support a finding that Sykes had moderate limitations in cognitive/communicative development.  She emphasizes that Sykes was placed in a full-time learning support program at school.

The ALJ decision did mention, however, that Sykes was in special education class.  The ALJ also discussed the psychological assessment report by Dr. Maroney.  She determined Sykes's IQ as 81, which put him in low average intelligence.  The records also show that another psychologist, Dr. Sapol, reported that Sykes's academic functioning was not a significant problem.

In addition, under the regulations the ALJ may give more weight to the standardized test than Sykes's school performance.  They provide that "cognitive function can be measured by standardized tests of intelligence, although the appropriate instrument

9

may vary with age. A primary criterion for limited cognitive function is a valid verbal, performance, or full scale IQ of 70 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1. On the other hand, "although grades and the need for special education placement are relevant factors which must be considered in reaching a decision . . . , they are not conclusive. There is too much variability from school district to school district in the expected level of grading and in the criteria for special education placement to justify reliance solely on these factors." 20 C.F.R. Pt. 404, subpt. P, App. 1. Thus, substantial evidence supports the ALJ's finding that Sykes's cognitive/communicative function is moderately limited.

Next, Hall contends that Sykes's social function is extremely limited, not markedly limited as the ALJ determined. She testified during the ALJ hearing that Sykes was violent and did not get along with his siblings or friends.

In his decision, the ALJ properly considered this testimony but noted Hall's acknowledgment that some of Sykes's fights with his siblings were triggered by teasing. Hall's own testimony also shows that Sykes often exhibits destructive behavior after his drug addict mother's visits. More importantly, the school reports submitted to the ALJ inform that Sykes was "cooperative," "got along with his classmates," and was "liked by peers." The regulation guideline provides that "problems in social functioning, especially in the area of peer relationships, are often observed firsthand by teachers and school nurses . . . . [S]chool records are an excellent source of information concerning function and standardized testing and should always be sought for school-age children." 20 C.F.R.

10

Pt. 404, subpt. P, App. 1. Accordingly, the ALJ had ample justification to find that Sykes's social functioning is not extremely limited.

Hall finally argues that Sykes's ability to concentrate, persist at a task, and his pace doing his tasks are more than moderately limited. Again, the ALJ discussed Hall's testimony that she had to supervise Sykes closely in completing household chores. But he gave considerable weight to the school reports stating that Sykes had adequate ability to complete his assignments and did do so.

* * * * *

In sum, the ALJ's opinion indicates that he considered and properly weighed all pertinent evidence. Based on substantial evidence he set out, the ALJ determined that, although Sykes's function was limited in some areas because of his ADHD, it did not rise to the level of a disabling limitation. Accordingly, we affirm the decision of the District Court upholding the Commissioner's denial of SSI.

---

TO THE CLERK:

Please file the foregoing opinion.

By the Court,

/s/ Thomas L. Ambro, Circuit Judge

11