

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2006

# Rivera v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1351

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rivera v. Comm Social Security" (2006). *2006 Decisions.* Paper 1695.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1695

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1351
_____

NEREIDA RIVERA,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 03-cv-05516)
District Judge: Honorable Joel A. Pisano

_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2005

Before: BARRY and AMBRO, Circuit Judges,
and POLLAK,* District Judge

(Filed January 31, 2006)

_____

OPINION
_____

_____

*Honorable Louis H. Pollak, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.
AMBRO, Circuit Judge

Nereida Rivera appeals from the District Court's order affirming the determination of the Administrative Law Judge ("ALJ") that Rivera was not disabled within the meaning of the Social Security Act and denying her claim for Social Security benefits.[1] For the reasons that follow, we conclude that the ALJ's determination is supported by substantial evidence, and thus affirm.

## I.

Because we write solely for the benefit of the parties, we do not recite the facts giving rise to this appeal. Our standard of review is identical to that of the District Court; we must determine whether there is substantial evidence to support the ALJ's decision. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). When there is such substantial evidence, we are "bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is less than a preponderance of the evidence but more than a mere scintilla." *Id*. For a decision to be supported by substantial evidence, the ALJ must have considered and weighed all relevant evidence on the record, not just evidence supporting his decision.

---

[1] The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g), and we have appellate jurisdiction under 28 U.S.C. § 1291.

*Cotter v. Harris*, 642 F.2d 700, 704 & n.6 (3d Cir. 1981). The record and the ALJ's

decision must include sufficient evidence and analysis to allow for meaningful judicial

review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). The

ALJ need not "use particular language or adhere to a particular format in conducting his

analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The only requirement is

that, reading the ALJ's decision as a whole, there must be "sufficient development of the

record and explanation of findings . . . ." *Id.*

## II.

In reviewing claims for disability insurance benefits, an ALJ uses a five-step test to

determine whether a claimant is disabled within the meaning of the Social Security Act.

*See* 20 C.F.R. § 404.1520(a)(4). Here, Rivera challenges the ALJ's evaluations at the

third and fourth steps.[2] In steps one and two, the claimant must establish that she has not

engaged in substantial gainful activity and suffers from a severe impairment. *Id.* §

404.1520(a)(4)(i), (ii). In step three, the ALJ determines whether the claimant's

impairments meet all the specific medical criteria of one of the impairments listed in

Appendix 1 to Subpart P of Part 404 of the regulations, or, taken as a whole, are

medically equal to one of them. *Id.* § 404.1520(a)(4)(iii). If so, she is presumed to be

disabled and entitled to benefits, and if not the ALJ moves on to step four. There, the

---

[2] Rivera also argues that the ALJ committed errors in the second step, but the ALJ found in her favor at that step (holding that she did have a severe impairment), so any such errors were harmless.

3

ALJ assesses the claimant's residual functional capacity. If she is deemed capable of doing her past relevant work, the ALJ will find that she is not disabled. *Id*. § 404.1520(a)(4)(iv). The claimant has the burden of proof in steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). No one bears the burden of proof for step three, because it "involves a conclusive presumption based on the listings[.]" *Id.* at n.2. The claimant must provide sufficient medical evidence in step three to show that her impairment is equal in severity to a listed impairment, but need not identify the relevant listings. *Burnett*, 220 F.3d at 120 n.2.

With respect to the third step, Rivera argues that the ALJ was required to identify which listings he used to make his decision, and that his decision was a mere conclusory statement that offered no evidentiary basis for his finding. Specifically, Rivera contends that the ALJ failed to state explicitly what listing he had used to make factual comparisons, aside from the Section 1.00 (Musculoskeletal System) of Appendix 1, which she characterizes as an "introductory treatise." This argument, however, incorrectly assumes that the ALJ must identify the specific listings in Appendix 1 he used as a comparison and make specific factual comparisons with the criteria of those listings. As previously noted, the ALJ is not required to use any specific format or language in his analysis, as long as he sufficiently develops the record to permit meaningful judicial review. *Jones*, 364 F.3d at 505. Moreover, the ALJ did state what listings he used for comparison. Section 1.00 is not merely an introductory treatise. Rather, as the District Court correctly observed, it "delineates the factors and standards for interpreting evidence

4

submitted on disability claims relating to musculoskeletal disorders, the very complaints that [Rivera made]." *See* 20 C.F.R. pt. 404, app. 1 § 1.00.

Rivera also argues that the ALJ's step three discussion was merely a conclusory statement that did not adequately describe the reasons for his holding. We agree. However, in this case the error was harmless. We require an ALJ to "fully develop the record and explain his findings at step three, including an analysis of whether and why [each of claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 120. We have expressed concern that an ALJ might not have satisfied the requirements of *Burnett* when he simply stated that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Particular consideration was given to Listing 1.00 (musculoskeletal system)." *Fargnoli*, 247 F.3d at 40. Similarly, the ALJ's step three discussion here stated only that "[no] treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show signs or findings that are the same or equivalent to those of any listed impairment, including Section 1.00 of the listing of impairments." It is not enough for the ALJ to conclude that no medical evidence meets or equals any of the listings, in the absence of any discussion of why the specific evidence provided by the claimant was not equivalent. However, in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence. Therefore, we hold

5

that here the ALJ's conclusory statement in step three was harmless.

## III.

Rivera also argues that the ALJ failed to address relevant evidence contradictory to his findings. Specifically, she argues that the ALJ failed to consider medical MRI evidence showing small vessel ischemic changes, and failed to address her testimony complaining of pain and limitation of motion.

Rivera has failed to show that the MRI evidence is relevant to her disability claim for arthritis, degenerative disc disease, and a liver tumor. The MRI was conducted more than six months before the onset date of her disability and for the purpose of examining complaints of dizziness, vertigo, headaches, and memory problems. Rivera has provided no evidence linking the ischemic changes to her grounds for disability, nor even any evidence that it was the cause of her other complaints. Thus, the MRI evidence does not constitute contradictory evidence. As such, the ALJ was not required to consider it expressly in his decision.

As for Rivera's complaints of pain and limitation of motion, the ALJ did consider the contradictory evidence and properly afforded it the value it was due. A claimant's subjective complaints of pain must be seriously considered in disability evaluations, even when not supported by medical evidence, but are not controlling. *Green v. Schweiker*, 749 F.2d 1066, 1067 (3d Cir. 1984). The ALJ acknowledged that Rivera's claims were credible, that she did indeed experience pain and restriction of motion. However, he held that Rivera's "allegations that [they prevent] all work activity are not found credible and

6

are inconsistent with the findings of her treating physicians." Therefore, the ALJ properly considered the evidence contradictory to his decision, giving it weight in his decision, but reasonably relying more heavily on the contrary medical evidence.

**IV.**

With respect to the fourth step, Rivera argues that the ALJ's determination that she had the residual capacity to return to her past relevant work was not supported by substantial evidence, and that he did not sufficiently compare her impairments with the specific requirements of her former work. In disability determinations, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli*, 247 F.3d at 43 (citing 20 C.F.R. § 404.1527(d)(2)). This is so because treating physicians have the most complete overview of a claimant's medical history, symptoms, and capabilities. *Id.* An ALJ may only reject a treating physician's opinion "on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotations omitted).

Here, the ALJ found that Rivera had a number of functional limitations, but was capable of performing "light work"[3] and returning to her past relevant work as a sound video assembler or circuit board solderer. This was a more generous finding than that of Rivera's treating physician for the past twelve years, Dr. Sanchez, who stated that Rivera

---

[3] "Light work" is a technical term defined and described in 20 C.F.R. § 404.1567(b).

7

had no functional limitations or impairments. Dr. Sanchez opined that Rivera was capable of all physical activities relating to work, including "sitting and standing, walking, lifting, carrying, handling objects, hearing, speaking, or traveling." Rivera's orthopedic surgeon, Dr. Malberg, concluded that she was capable of doing a range of light work. Disability Determination Services (DDS), an agency of medical experts experienced with evaluating disability claims, similarly found that Rivera was capable of a range of light work, including standing and walking about six hours in an eight-hour workday, and occasionally lifting twenty pounds. As discussed above, the ALJ also considered Rivera's subjective reports of pain and restricted motion, but did not find her description of their disabling effects to be credible, and gave more weight to the expert opinions of her treating physician and the other medical examiners. Because of the substantial weight given to medical evidence, especially the opinions of treating physicians, there is substantial evidence to support the ALJ's decision that Rivera was capable of performing a range of light work and the physical requirements of her former work.

Rivera further argues that the ALJ did not sufficiently compare her impairments with the specific requirements of her former work. We disagree. In deciding whether a claimant has the functional capacity to return to her past relevant work, an ALJ considers the claimant's description of the requirements of her former work, what requirements she can no longer meet, the medical evidence establishing how her impairment limits her ability to meet those requirements, and in some cases, supplementary or corroborative

8

evidence (including the Dictionary of Occupational Titles). *Burnett*, 220 F.3d at 123 (citing S.S.R. 82-62). In his analysis, the ALJ first described the specific physical activities that the medical examiners had determined Rivera was capable of performing. He then compared them to the physical requirements of her past relevant work as a sound video assembler and a circuit board solderer, which she had described in her testimony and disability insurance application. He found that she was capable of performing the physical requirements she had described. As corroborating evidence, the ALJ noted that the Dictionary of Occupational Titles listed those jobs as requiring only "light work," which he had found Rivera to be capable of based on the medical evidence. In this context, the ALJ sufficiently articulated his findings that Rivera's residual functional capacity permitted her to perform the specific physical requirements of her former employment, and thus his holding was supported by substantial evidence.

## V.

For the reasons discussed above, the ALJ's decision that Rivera was not disabled within the meaning of the Social Security Act was supported by substantial evidence. We affirm the decision of the District Court so holding.