**Frances E. GARRETT, Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY.**

No. 07–1548.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) March 10, 2008.

Filed: April 17, 2008.

Thomas H. Klein, Smith & Klein, Eaton-town, NJ, for Appellant.

Social Security Administration Office of General Counsel, Region II New York, NY, for Commissioner of Social Security.

Before: FUENTES, CHAGARES, and ALDISERT Circuit Judges.

## OPINION

FUENTES, Circuit Judge:

Frances Garrett ("Garrett") appeals the order of the District Court affirming the Commissioner of Social Security's (the "Commissioner") denial of her disability benefits under the Social Security Act (the "Act"). *See* 42 U.S.C. § 423. For the following reasons, we will affirm.

### I.

Because we write only for the parties, we note only the essential facts. Garrett was born in 1956 and was 48 years old at the time of the Administrative Law

Judge's ("ALJ") decision denying her disability benefits. She completed the twelfth grade. Her past work experience includes employment as a data entry clerk, day care worker, receptionist, and clerk typist. Garrett filed her application for disability benefits on September 3, 2002, with an alleged onset date of November 3, 2000. She alleged severe impairments of the neck and back due to a motor vehicle accident. Her claim was denied initially and on reconsideration, and she subsequently requested a hearing before an ALJ which was held on June 7, 2004.

In a detailed opinion, the ALJ found that Garrett had not been under a disability, as defined by the Act, at any time since her alleged onset date of disability through the date of decision. Applying the familiar five-step analysis for disability claims, the ALJ found at step one that Garrett had not engaged in substantial gainful employment since her alleged onset date. At steps two and three, the ALJ found that, while Garrett's chronic cervical and lumbosacral strain are "severe" within the meaning of the regulations, neither impairment was severe enough to meet or medically equal the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing"). After explaining why he considered Garrett's testimony about her limitations to be less than credible, the ALJ found at step four that Garrett retained the residual functional capacity ("RFC") to perform work at the "light" exertional level. Finally, the ALJ found that Garrett was not disabled at step four because she could perform her prior work.

Garrett filed an action in the United States District Court for the District of New Jersey seeking review of the Commissioner's decision. In a comprehensive opinion, the District Court affirmed the Commissioner's finding that Garrett was not disabled. Garrett timely appealed the

District Court's ruling, which we have jurisdiction to review under 28 U.S.C. § 1291.

## II.

This Court "review[s] the ALJ's decision under the same standard as the District Court to determine whether there is substantial evidence on the record to support the ALJ's decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). "[W]e are bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir.2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564–65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Our review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.1999).

## III.

On appeal, Garrett raises many of the same arguments that she raised before the District Court. She argues that: (A) the ALJ erred at step three in finding that her impairments, when taken together, did not meet or equal in severity a Listing of Impairment, particularly Listing 1.04; and (B) the ALJ erred in determining that she retained the RFC to perform her past relevant work. We will address these arguments below.

## A.

■ Garrett first argues that the ALJ erred at step three by: (1) stating summarily that her impairments did not meet a Listing; and (2) failing to find that her impairments, together, meet or equal List-

ing 1.04.[1] We agree with the District Court's conclusion that the ALJ provided sufficient explanation for his finding, along with substantial evidence in the record, that Garrett's impairments failed to meet or equal a Listing.

Contrary to Garrett's assertion, the ALJ provided sufficient explanation for his conclusion that her impairments did not meet or equal in severity a Listing. As we stated in *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir.2004), we do not require an ALJ to adhere to any set format for explaining his analysis so long as there is "sufficient development of the record and explanation of findings to permit meaningful judicial review." The ALJ's analysis at step three was more than sufficient to permit us to meaningfully review his decision.

In particular, the ALJ performed an exhaustive review of the medical record (Administrative Record ["A.R."] 13–17) and then set forth the Listings he considered (A.R. 17). The ALJ then stated that, while the evidence indicated that Garrett suffered from chronic cervical and lumbosacral sprain, her impairments were not severe enough to meet or equal a Listing. The ALJ specifically noted that her impairments did not meet Listing 1.04 because, as stated in a treating orthopedist's

report, there was no evidence of motor or sensory deficiencies. (A.R. 17.) Furthermore, the ALJ specifically noted that there was no evidence of motor or sensory deficiencies, and no evidence of spinal stenosis resulting in pseudoclaudication, spinal arachnoiditis, or other manifestations, as required under Listing 1.04. The ALJ's analysis clearly "set forth the reasons for his decision," allowing us to meaningfully review his conclusions. *See Burnett*, 220 F.3d at 119.

■ Furthermore, there is substantial evidence in the record to support the ALJ's conclusion that Garrett's impairments do not meet or equal the criteria in Listing 1.04. First and foremost, Garrett provides us with no citations to any record evidence demonstrating that her impairments are of Listing-level severity. *See id.* at 120 n. 2 (noting that "[t]he claimant must provide sufficient medical evidence at step three to show that her impairment is equal in severity to a listed impairment. . . ."). Furthermore, " '[f]or a claimant to show his impairment matches a listing, it must meet *all* of the specified medical criteria.' " *Jones*, 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original)). While Garrett's

---

1. Listing 1.04 provides:

   Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

   A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

   B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

   20 C.F.R. Pt. 404, Subpt. P, App. 1.

impairments met some of the criteria under Listing 1.04, there is substantial evidence to support the ALJ's conclusion that her impairments failed to meet all the criteria of Listing 1.04. For instance, the record indicated that Garrett could ambulate effectively (A.R. 167, 204–05) and that she retained hand and finger dexterity (A.R. 167). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2) (requiring proof of inability to ambulate effectively and inability to perform fine and gross manipulation to meet or equal any relevant impairment under Listing 1.00). Moreover, as the District Court correctly noted, there is no evidence in the record of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, as required under Listing 1.04. *See id.* § 1.04. Garrett points us to no such evidence in the record. Therefore, the District Court correctly held that the ALJ's finding at step three was supported by substantial evidence.

### B.

■ Garrett also argues that the ALJ's determination that she retained the RFC to perform her past relevant work was not based on substantial evidence. According to Garrett, the ALJ failed to perform a function-by-function analysis of her previous work, failed to determine whether her previous work allowed for a sit/stand option, and improperly discredited her testimony. We disagree.

At step four, the Commissioner determines whether, despite her severe impairments, the claimant retains the RFC to perform her past relevant work. *See* 20 C.F.R. § 404.1520(e), (f). In making this determination, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citations omitted). Thus, the Commissioner must "consider the combined effect of all of [the claimant's] impairments without regard to whether such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.2005). The determination of the claimant's RFC is the exclusive responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

Importantly, the ALJ need only include in the RFC those limitations which he finds credible. *See Burnett*, 220 F.3d at 121. Accordingly, to the extent the ALJ found Garrett's alleged limitations less than credible, they were properly omitted from the RFC analysis. *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir.2002). At step four, Garrett bears the burden of demonstrating that she lacks the RFC to perform her past relevant work. *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.1999).

At step four, the ALJ found that Garrett maintained the RFC to perform light work involving "lifting and carrying objects weighing 20 pounds occasionally; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking and sitting up to six hours in an 8–hour workday with the option to sit and stand to alleviate pain and stiffness; pushing and pulling arm and leg controls." (A.R. 19.) The ALJ then stated that Garrett's previous work as a receptionist, data entry clerk, and typist, involved "having to sit at a desk for up to six hours a day and perform data entry with no appreciable lifting or carrying requirements." (A.R. 19.) Because of this, the ALJ determined that Garrett retained the RFC to perform her previous work.

We agree with the District Court that this finding was based on substantial evidence. The medical evidence submitted by Garrett only indicated that, while she suffered from certain impairments, her impairments were not so severe as to prevent her from returning to her previous work.

For example, the ALJ noted the physical examinations by various doctors were "relatively benign" (A.R. 18), and this conclusion was supported by the record. For instance, Garrett's treating physician, Dr. Donald, remarked that Garrett had a good range of function, her strength was full, her reflexes were intact, and she had negative straight leg testing. (A.R. 18, 177–82.) Furthermore, Dr. Nkwonta, who performed a consultative examination, reported that Garrett was in no acute distress, she had a normal gait, and she had a full range of motion in her shoulders, elbows, forearms, wrists, hips, knees and ankles. (A.R. 18, 166–68.) The ALJ also discounted the limitations in Dr. Donald's report, finding that Dr. Donald did not indicate that Garrett was totally unable to work. The ALJ further noted the absence of clinical findings supporting the limitations noted by Dr. Donald. Furthermore, as discussed below, the ALJ found that Garrett's testimony was not entirely credible. Based on the foregoing, we agree with the District Court that the ALJ based his RFC findings on substantial evidence.

Although Garrett argues that the ALJ failed to perform a function-by-function analysis of her prior work, the record indicates that the ALJ specifically questioned Garrett as to the work she performed in her prior jobs. The ALJ also asked her whether she could sit and stand during those jobs, and she responded that her work involved changing positions and alternating between sitting and standing. It is apparent that the ALJ took these answers into account in determining that Garrett retained the RFC to perform her past relevant work. We will require no more from the ALJ.

Garrett also argues that the ALJ erred in concluding that her testimony was less then fully credible. When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings. *See Schaudeck,* 181 F.3d at 433. Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. *See Burns,* 312 F.3d at 129–30. Additionally, allegations of pain and other subjective symptoms must be supported by objective medical evidence. *See* 20 C.F.R. § 404.1529; *see also Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir.1999).

The ALJ noted that the conservative treatment Garrett received for her impairments indicated that they were not as debilitating as she claimed. The ALJ also discounted Garrett's claims of disability by noting that she was never hospitalized for her conditions, and could perform household chores and activities of daily living. The ALJ also remarked that, while Garrett claims constant excruciating head, neck, and back pain, she only takes Advil or Excedrin. Furthermore, as noted above, the record evidence corroborated these findings that her impairments were not as debilitating as claimed. Accordingly, the ALJ properly discounted Garrett's testimony.

## IV.

For the foregoing reasons, we will affirm.