**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2361
_____

JOY DAWN BEATTY,

Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 3-21-cv-00012)
District Judge:  Honorable Alan N. Bloch
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on March 24, 2023

Before:  RESTREPO, PHIPPS and ROTH, Circuit Judges

(Opinion filed: December 7, 2023)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

Joy Dawn Beatty appeals the District Court's order affirming the Social Security Administration's (SSA) denial of her application for supplemental security income (SSI). Because the District Court correctly found that the Administrative Law Judge's (ALJ) decision not to include a social interaction limitation in its assessment of her residual functional capacity was supported by substantial evidence, we will affirm.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Beatty applied for SSI.  In her application, Beatty alleged physical and mental conditions that prevented her from gainful employment.  The ALJ denied her claim, and she requested a hearing.  After the hearing, the ALJ denied Beatty's application. Although the ALJ recognized that Beatty has several severe impairments, he found that Beatty possessed the residual functional capacity (RFC) to perform certain work with several physical restrictions.  Based on these findings, the ALJ held that Beatty is not disabled as defined in the Social Security Act.

Beatty appealed on the ground that the ALJ erred in their analysis of the RFC because it did not find that Beatty's severe mental impairments cause a limitation in her ability to interact with others.  The District Court affirmed the ALJ's finding.  Beatty appealed.

## II.      JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction under 42 U.S.C. § 405(g).  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

2

"Like the District Court, we must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record."[1]  Substantial evidence simply means "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]

## III.    DISCUSSION

In order to qualify for SSI, a person must suffer from a disability, meaning she must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3]  Pursuant to 20 C.F.R. § 416.920, the SSA applies a five-step test to determine whether a person is disabled.[4]  Beatty takes issue with the ALJ's assessment at step four.

---

[1] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that we look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations" (second alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

[2] *Consol. Edison*, 305 U.S. at 229.

[3] 42 U.S.C. § 423(d)(1)(A).

[4] *Burns v. Barnhart*, 312 F.3d 113, 118–19 (3d Cir. 2002) (citing 20 C.F.R. §§ 220.141, 416.920, 416.945; *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).  The regulations implementing the Social Security Act provide the following five steps:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)

3

At step four, the claimant must "demonstrate that he does not have sufficient residual functional capacity to perform his past relevant work. Residual functional capacity is defined as 'what a [claimant] can still do despite his limitations.'"[5] To make this assessment, an ALJ may consider objective medical evidence, medical opinions, evidence from nonmedical sources including the claimant herself, and prior administrative medical findings.[6]

Beatty contends that the ALJ erred at step four because the ALJ failed to fully consider certain evidence before him—records from the peer counseling service, PeerStar, LLC—and because the evidence as a whole does not support the lack of limitation related to social interaction in the ALJ's RFC determination. We disagree.

---

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and § 416.960(b).
(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and § 416.960(c).

20 C.F.R. §§ 416.920(a)(4)(i)–(v).
[5] *Burns*, 312 F.3d at 119 (quoting 20 C.F.R. § 416.945(a)) (citations omitted) (alteration in original).
[6] 20 C.F.R. §§ 416.913(a)(1)–(5).

First, the ALJ neither ignored nor erred in its review of records from PeerStar, a peer support service in which Beatty participates. As an initial matter, the ALJ acknowledged PeerStar's records in discussing Beatty's neurological symptoms and limitations. An ALJ need not specifically discuss all evidence but rather need only provide a more thorough examination of "significant probative evidence" it rejects.[7] The ALJ did not act contrary to these requirements.

The ALJ accepted the PeerStar records, which are generally consistent with the rest of the evidence in the record. PeerStar provided no diagnoses or assessment contrary to that of the psychological experts in the record. PeerStar is not a medical or mental health provider rendering diagnoses or "medical or psychological advice."[8] Instead, PeerStar provides "peer-support services . . . comprised of interactions conducted by self-identified current or former consumers of behavioral health services."[9] Further, although PeerStar's records suggest that Beatty had a "sufficient degree of interpersonal problems,"[10] there are no specific details in the records, as the District Court properly found, to suggest that the PeerStar records contradicted other record evidence. Instead, they were overall consistent "with the ALJ's finding that [Beatty] had no history of difficulty interacting with authority figures or other people generally."[11] Thus, because

---

[7] *Burnett v. Comm'r*, 220 F.3d 112, 121–22 (3d Cir. 2000).
[8] Appx. 286.
[9] Appx. 286.
[10] Appx. 298; SSA Record 1228.
[11] Appx. 5. *C.f. Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981) (finding that the ALJ erred in failing to address *expert medical testimony* that was probative and *conflicted* with other testimony accepted by the ALJ).

the PeerStar records were consistent with the other evidence, and the ALJ did not reject the records, the ALJ gave the PeerStar records adequate consideration.

Second, the ALJ considered all the remaining evidence, "including the objective findings, [Beatty's] course of treatment, and her activities of daily living," which together constitute "more than a mere scintilla" of evidence supporting the ALJ's determination that Beatty has no more than a mild social interaction limitation.[12]  Notably, Beatty never alleged any issues with social interactions in her hearings and submissions before the ALJ.  In fact, she did not claim that she has any problems getting along with family, friends, neighbors, authority, or others and never identified that as an area her physical and mental impairments affect.  In fact, the record contains evidence to the contrary. Beatty engages in numerous social activities "almost every day" including shopping, hanging out with friends, going to the mall, and attending church.[13]  Further, testimony from Beatty's mental health treatment provider suggests that the treatment has been successful and Beatty is "capable of working."[14]

Likewise, other examinations from mental health experts do not reveal issues with social functioning; as the ALJ noted, they instead show that Beatty has "good eye contact, a cooperative and friendly manner, coherent thought processes, . . . and normal . . . judgment, and anxiety level."[15]  Agency psychological consultants similarly concluded that Beatty did not need social interaction restrictions based on numerous findings,

---

[12] Appx. 17–19; *see Biestek*, 139 S. Ct. at 1154.
[13] SSA Record 295.
[14] SSA Record 1619.
[15] Appx. 17.

including Beatty's ability to follow simple instructions and perform activities within a schedule, without special supervision, and in proximity to others.[16]

Based on this panoply of evidence, we conclude that substantial evidence supports the ALJ's finding that Beatty did not require additional limitations related to social interactions in the RFC.

Accordingly, we will affirm the judgment of the District Court.

---

[16] SSA Record 95, 111. Beatty suggests that these reports should not have been given weight because the consultants did not review the PeerStar reports. We disagree, as the consultants reviewed other evidence and, as the ALJ noted, their conclusions are consistent with other evidence in the record, as well as the PeerStar reports. Further, the consultants' conclusions were only part of the evidence on which the ALJ relied.

7